UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In Re:                                                    Chapter 11

25-16 37th AVE OWNERS, LLC,                               Case No.: 21-42662 (JMM)

                                                  Debtor.
-----------------------------------------------------------X

**APPLICATION SEEKING ENTRY OF AN ORDER, PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004, DIRECTING THE PRODUCTION OF DOCUMENTS BY AND EXAMINATION OF BARRY LEON AND PENTA RESTORATION CORP**

TO:    THE HONORABLE JIL MAZER-MARINO,
         UNITED STATES BANKRUPTCY JUDGE:

        25-16 37th Owners, LLC, the debtor and debtor in possession (the "Debtor"), by its undersigned proposed counsel, submits this application ("Application") seeking entry of an Order, pursuant to section 105(a) of Title 11 of the United States Code ("Bankruptcy Code") and Rule 2004 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), directing the production of certain records, documents and electronic files that are in the possession, custody and control of Barry Leon ("Leon") and Penta Restoration Corp. ("Penta") and examination of Leon and Penta, and respectfully sets forth and represents as follows:

## **JURISDICTION**

        1.    The Court has jurisdiction to consider this application pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. This application constitutes a core proceeding as defined under 28 U.S.C. § 157(b)(2).

3. The statutory predicates for this application are Bankruptcy Rules 2004 and 9016.

## FACTUAL BACKGROUND

### The Debtor

4. The Debtor is a New York Limited Liability Company engaged in the business of owing and developing "The SMYTH", a 53,954 GSF 7-Story mixed-use condominium project located at 25-16 37th Avenue, Long Island City, New York (the "Property"). The proposed development will contain a 29-car parking garage, 15,371 NSF of retail space, and 28,998 NSF of residential space across 38 condominium units. The project was designed by world the renowned architectural firm Brent M Porter, Architect and Associates. Penta was hired to be the construction manager for the project.

### The Secured Construction Loan
### Currently Held by LIC Senior Debt LLC

5. Pursuant to certain Loan Agreements (hereafter defined), Popular Bank f/k/a Banco Popular North America ("Popular Bank") provided financing to the Debtor to develop the Property. In total, Popular Bank advanced the Debtor the aggregate principal sum of $9,069,311.24, evidenced by certain Notes, as defined and described below. There were numerous events of default under the Loan Documents (hereafter defined), but Popular Bank agreed to defer exercising its contractual and legal rights pursuant to a forbearance agreement that expired on September 30, 2020. Despite Popular Bank's

forbearance, the Debtor failed to cure the existing defaults, and further defaulted by failing to pay all amounts due under the Notes and other Loan Documents on the September 29, 2020 Maturity Date of the Notes.

**The Amended and Restated Building Loan Note,
Amended and Restated Building Loan Mortgage
<u>and Building Loan Assignment of Leases and Rents</u>**

6. To evidence advances up to $9,543,335.00 made to the Debtor for a building loan (the "Building Loan," which together with the Project Loan are referred to collectively as the "Loans") pursuant to an Amended and Restated Building Loan Agreement dated as of June 27, 2019 (the "Building Loan Agreement"), the Debtor executed and delivered to Popular Bank an Amended and Restated Building Loan Note dated as of June 27, 2019 with an effective date of March 29, 2019 (the "Building Loan Note," which together with the Project Loan Note are referred to collectively as the "Notes") pursuant to which the Debtor promised to pay to Popular Bank the principal sum of $9,543,335.00, with interest to be computed thereon as provided in the Building Loan Note.

7. The Building Loan Note was secured by a Building Loan Mortgage and Security Agreement made by the Debtor to Popular Bank, in the amount of $9,543,335.00, dated December 29, 2016 (the "Building Loan Mortgage," which together with the Project Loan Mortgage is referred to collectively as the "Mortgages") and recorded on February 3, 2017 in CRFN 2017000048908 in the City Register's Office, for which a mortgage recording tax in the amount of $267,212.41 was paid, which Building Loan Mortgage was

modified and extended by a Building Loan Mortgage Modification and Extension Agreement made by and between the Debtor and Popular Bank, dated June 27, 2019, and recorded on July 22, 2019 m CRFN 2019000230966 in the City Register's Office.

8. In connection with the Building Loan, the Debtor also executed a Building Loan Assignment of Leases and Rents (the "Building Loan ALR," which together with the Project Loan ALR are referred to collectively as the "ALRs"), dated as of June 27, 2019, and recorded July 22, 2019 in CRFN 2019000230967 in the City Register's Office.

**The Amended and Restated Project Loan Note,**
**Amended and Restated Project Loan Mortgage**
**and Project Loan Assignment of Leases and Rents**

9. To evidence advances made by Popular Bank to the Debtor for a project loan (the "Project Loan") up to $8,036,665.00 pursuant to an Amended and Restated Project Loan Agreement, dated as of June 27, 2019 (the "Project Loan Agreement"), the Debtor executed and delivered to Popular Bank an Amended and Restated Project Loan Note dated as of June 27, 2019 with an effective date of March 29, 2019 ( the "Project Loan Note") pursuant to which the Debtor promised to pay to Popular Bank the principal sum of $8,036,665.00, with interest to be computed thereon as provided in the Project Loan Note.

10. The Project Loan Note was secured by the mortgages referenced in that certain Project Loan Mortgage Modification and Extension Agreement, dated as of June 27, 2019, made by the Debtor to Popular Bank (the "Project Loan Mortgage"), which was recorded in the Office of the City Register of the City of New York ("City Register") on

July 22, 2019 with City Register File No. (CRFN) 2019000230968.

11. The Project Loan Mortgage consolidated, modified, coordinated and extended the following mortgages to create a single lien encumbering the Mortgaged Property, as such term is defined in the Project Loan Mortgage:

> 1. A Mortgage made by the Debtor and Meadow Street Partners LLC to Tideway Capital Funding LLC as agent for Co-Lenders, in the amount of 4,700,000.00, dated April 21, 2015 and recorded May 19, 2015 in CRFN 2015000167529 in the City Register's Office. (Mortgage Tax paid: $131,600.00). (Originally affects Lot 22 and property in Nassau County, Section 35, Block 371, Lots 11, 12 & 13 by address 40-48 Hempstead Gardens Drive, West Hempstead, NY);
>
>> 1a. Which Mortgage 1 was modified and spread by a Mortgage Modification, Extension and Spreader Agreement made by the Debtor and Meadow Street Partners LLC to Tideway Capital Funding LLC as agent for Co- Lenders, dated March 17, 2016 and recorded May 4, 2016 in CRFN 2016000153034 in the City Register's Office to include Lot 21;
>
> 2. A Mortgage made by the Debtor and Meadow Street Partners LLC to Tideway Capital Funding LLC as agent for Co-Lenders, in the amount of $1,500,000.00, dated March 17, 2016 and recorded May 4, 2016 in CRFN 2016000153035 in the City Register's Office. (Mortgage Tax paid: $42,000.00). (Affects Lots 21 and 22 and property in Nassau County, Section 35, Block 371, Lots 11, 12 & 13 by address 40-48 Hempstead Gardens Drive, West Hempstead, NY);
>
>> 2a. Which Mortgages 1 and 2 were consolidated by Consolidation, Extension and Modification Agreement made by and between the Debtor and Meadow Street Partners LLC to Tideway Capital Funding LLC as agent for Co- Lenders, dated 03/17/2016 and recorded May 4, 2016 in CRFN 2016000153036 in the City Register's Office, to form

a single lien in the amount of $6,200,000.00, and which property in Nassau County, Section 35, Block 371, Lots 11, 12 & 13 by address 40-48 Hempstead Gardens Drive, West Hempstead, NY was released from Mortgages 1 and 2, as consolidated, by a Partial Release of Mortgage made by Tideway Capital Funding LLC as agent for Co-Lenders, dated December 29, 2016 and recorded January 20, 2017 in Liber 13464 Page 592.

2a. Which Mortgages 1 and 2, as consolidated, were assigned by Assignment of Mortgage from Tideway Capital Funding LLC as agent for Co-Lenders to Banco Popular North America, dated December 29, 2016 and recorded February 3, 2017 in CRFN 2017000048911 in the City Register's Office.

3. A Gap Mortgage made by the Debtor to Banco Popular North America, in the amount of $1,836,655.00, dated December 29, 2016 and recorded February 3, 2017 in CRFN 2017000048912 in the City Register's Office (Mortgage Tax paid: $51,427.61). (Affects Lots 21 and 22)

3a. Which Mortgages 1 through 3 were consolidated by a Consolidation, Modification and Extension Agreement made by and between the Debtor and Banco Popular North America, dated December 29, 2016 and recorded February 3, 2017 in CRFN 2017000048913 in the City Register's Office, to form a single lien in the amount of $8,036,665.00.

3b. Which Mortgages 1 through 3 were modified by a Project Loan Mortgage Modification and Extension Agreement made by and between the Debtor and Popular Bank f/k/a Banco Popular North America, dated June 6, 2019 and recorded July 22, 2019 in CRFN 2019000230968 in the City Register's Office, in the amount of $8,036,665.00.

12. In connection with the Project Loan, the Debtor also executed a Project Loan Assignment of Leases and Rents (the "Project Loan ALR"), dated as of June 27,

2019, and recorded July 22, 2019 in CRFN 2019000230969 in the City Register's Office.

**The Security Agreement**

13. The Mortgages also constitute security agreements under the New York Uniform Commercial Code ("UCC") with respect to, inter alia, all accounts, fixtures and personalty, and other described collateral constituting a part of the Mortgaged Property, as such term is defined in the Mortgages (the "Personal Property"). Pursuant to the Mortgages, the Debtor granted Popular Bank a continuing security interest in and lien on all rights, titles and interests then owned or thereafter acquired by the Debtor in the Personal Property.

14. To further secure the Loans, the Debtor executed a separate Security Agreement, dated as of June 27, 2019, in favor of Popular Bank (the "Security Agreement").

15. The Security Agreement grants Popular Bank a continuing security interest in and lien on all right, title and interest then owned or thereafter acquired by the Debtor in the Personal Property.

16. The security interests were perfected by the filing of UCC-1 Financing Statements with (i) the New York Department of Sate on January 6, 2017 and January 9, 2017, respectively, as Filing Number 2017001065027254 and Filing Number 201701095030372 and (ii) the Office of the City Register on February 3, 2017 as CRFN 2017000048910 with respect to Block 368 Lot 21 and as CRFN 2017000048915 with respect to Block 368, Lot 22.

**The Guaranty of Payment**

17. To induce Popular Bank to make the Loans and to extend credit to the Debtor as evidenced by the Notes and Mortgages, Leon executed, acknowledged and delivered to Popular Bank a Guaranty of Payment made as of June 27, 2019 (the "Guaranty of Payment"). Pursuant to the terms of the Guaranty of Payment, Leon irrevocably and unconditionally guaranteed, inter alia, payment of all amounts due under the Notes and Mortgages, as well as the due and prompt performance of the Debtor's obligations thereunder. The Project Loan Agreement, Project Loan Note, Project Loan Mortgage, Project Loan ALR, Building Loan Agreement, Building Loan Mortgage, Building Loan ALR, Security Agreement, Guaranty of Payment and any and all other documents executed or delivered by or on behalf of the Debtor or Leon in connection with the Loans are referred to collectively as the "Loan Documents."

**The Forbearance Agreement**

18. Following the Debtor's defaults under the Loan Documents, in May 2020, the Debtor and Leon, a principal of the Debtor's 37th Ave Mezz LLC non preferred member at the time, see paragraph 26, supra, ("Obligors") and Popular Bank entered into a Forbearance Agreement (the "Forbearance Agreement").

19. Pursuant to the Forbearance Agreement, Obligors admitted that Events of Default (defined in the Forbearance Agreement as the "Existing Defaults") had occurred, the occurrence of which entitled Popular Bank to exercise its rights and remedies under the Loan Documents and to accelerate the Loans.

20. In consideration of Obligors' acknowledgments, covenants and agreements in the Forbearance Agreement, Popular Bank agreed to defer exercising its rights as a result of the Existing Defaults, without waiving the Existing Defaults, through the earlier of the Forbearance End Date of September 30, 2020 or date of any other terminating event under the Forbearance Agreement (the "Forbearance Period").

21. The Forbearance Agreement provides, *inter alia*, that upon an Event of Default under the Loan Documents (other than the Existing Defaults), Popular Bank, in its sole and absolute discretion, may terminate the Forbearance Period and/or elect to exercise its rights and remedies, or any portion thereof, under the Loan Documents.

**The Default**

22. The Debtor defaulted under the Notes by failing to pay Popular Bank all amounts due and owing on September 29, 2020, the Maturity Date of the Notes, and the Forbearance End Date expired on September 30, 2020.

23. By Notice of Default, Demand for Payment and Reservation of Rights, Popular Bank, through counsel, inter alia, gave notice to Obligors that Popular Bank had elected to terminate the Forbearance Period, and hereby reaffirms its election to terminate the Forbearance Period, and to demand, and hereby reaffirms its election to demand, immediate payment in full of: (a) the outstanding principal amount of the Building Loan Note in the amount of $1,105,002.24; (b) the outstanding principal amount of the Project Loan Note in the amount of $7,964,309.00; and (c) all accrued and unpaid interest at the Interest Rate and Default Rate (as such terms are defined in the Notes), as applicable, until actual receipt and collection of the entire Indebtedness (as such term is defined in the

Notes and Mortgages), escrow deficiency, late charges, reasonable attorney fees and expenses incurred as a result of the default, incurred to the date of payment, together with such other amounts as are due and owing under the Loan Documents and Forbearance Agreement.

**Popular Bank's Commencement of Foreclosure Action**

24. On or around November 25, 2020, Popular Bank commenced a foreclosure action entitled <u>Popular Bank v. 25-16 37 Ave Owners LLC et. al.,</u> (Case No. 722851/2020) pending in the Supreme Court of the State of New York, Queens County; (the "Foreclosure Action").

25. On or around September 23, 2021, Popular Bank assigned all of its rights under the Loan Documents and its claims in the Foreclosure Action to LIC Senior Debt LLC.

## The Preferred Equity Investment in the Debtor

**The Operating Agreement**

26. On or around June 27, 2019, 25-16 37th Ave Mezz LLC ("Mezz LLC"), owned one hundred percent (100%) of the issued and outstanding non-preferred limited liability company membership interests in the Debtor. Leon was a principal of Mezz LLC.

27. Pursuant to a Second Amended and Restated Operating Agreement (the "Operating Agreement"), 27th Street Funding LLC ("Funding LLC") offered a capital contribution of up to of $8,250,000.00 to the Debtor (the "Capital Contribution") in exchange for preferred membership interests in the Debtor ("27 Funding's Preferred Interest"). Pursuant to the Operating Agreement, Funding LLC's interest represented its

10

unconditional right to repayment of its Capital Contribution plus a "Preferred Return", as defined in the Operating Agreement. The Operating Agreement further provided that Funding LLC is be paid its accrued but unpaid Preferred Return monthly in arrears on the first business day of each month until 27 Funding's Preferred Interest had been redeemed in full. 27 Funding's Interest was subject to mandatory redemption at the "Redemption Price" on or before the "Mandatory Redemption Date", as those terms were defined in the Operating Agreement. The preferred membership interest carried no voting or management rights.

**The Mezzanine Investment Agreement**

28. In addition to the Operating Agreement, on or around June 27, 2019, 27 Funding and Mezz LLC entered into a Mezzanine Investment Agreement (the "Investment Agreement"), wherein 27 Funding's Preferred Interest was further set forth.

29. Pursuant to the Operating Agreement and Investment Agreement, the Redemption Price is defined as "the sum of (i) outstanding Preferred Capital Contribution, plus (ii) any accrued but unpaid Preferred Return through the date of redemption, plus (iii) any Prepayment Premium, plus (iv) any fees (including the Exit Fee) payable to the Preferred Member under Investment Agreement, plus (v) any other sums due under the under the Mezzanine Investment Agreement, if any."

30. The Investment Agreement provided, that the Debtor's failure to timely make any payment to 27 Funding under the Investment Agreement or Operating Agreement constitutes an "Event of Default" under the Investment Agreement (an "Investment Agreement Default"). The Investment Agreement further provided, *inter alia*,

that upon any Investment Agreement Default, the Redemption Price shall be immediately due and payable at the option of Funding LLC. The Investment Agreement further provided that upon an Investment Agreement Default, the Redemption Price shall, at the 27 Funding's option, bear interest at a per annum rate equal to the rate of twenty four (24%) percent per annum until it is fully paid.

**The Guaranty of Payment**

31. As and for additional security for the payment and performance under the Operating Agreement and Investment Agreement, on or about June 27, 2019, Mezz LLC and Leon, as guarantors, executed and delivered to 27 Funding a guaranty wherein and whereby Mezz LCC and Leon absolutely and unconditionally guaranteed, inter alia, the payment and performance of all of the obligations under the Mezzanine Investment Documents, including but not limited to, the Redemption Price to 27 Funding (together, the "Guaranty.")

**The Forbearance Agreements**

32. During 2019, various defaults under the Mezzanine Investment Documents occurred, resulting in 27 Funding sending a notice dated February 4, 2020 (the "Default Notice") advising the Debtor of the Investment Agreement Default.

33. In or about March 2020, and again in or about May, 2020, Obligors entered into "Forbearance Agreements" with 27 Funding whereby it agreed, pursuant to the terms of the Forbearance Agreements, that 27 Funding would forbear, inter alia, from enforcement of certain of its rights and remedies under the Mezzanine Investment Documents based upon the Default. (The Operating Agreement, Investment Agreement,

Guaranty and Forbearance Agreements, along with all other documents executed therewith, shall be collectively referred to herein as the "Mezzanine Investment Documents.")

34. Pursuant to the Forbearance Agreements, the Obligors admitted that they were in default under the Mezzanine Investment Documents. Pursuant to the Forbearance Agreements, the Obligors agreed that the Redemption Price under the Mezzanine Investment Documents was due and owing and that the Redemption Price was in the amount of $8,250,000.00, less the $6,476,446.63 representing the Reserve Funds (as defined in the Mezzanine Investment Documents) applied by 27 Funding, for a balance of $1,773,553.37, plus all unpaid interest, fees and expenses due under both Forbearance Agreements and the Mezzanine Investment Documents.

35. In consideration of the Obligors' acknowledgements, covenants and agreements under the Forbearance Agreements, 27 Funding agreed to defer exercising its rights as a result of the Default under the Mezzanine Investment Documents until the earlier of September 30, 2020 or other terminating event(s) specified in the Forbearance Agreements (the "Forbearance End Date"). The Forbearance Agreements further provided, among other things, that upon the Forbearance End Date, 27 Funding could exercise any and all rights and remedies under the Mezzanine Investment Documents and applicable law.

36. The Obligors failed to pay the balance due of $2,374,665.00 and all other sums due on the Redemption Price on or before September 30, 2020 and through the current date (the "Forbearance Default").

37. On October 6, 2020, as a result of the Forbearance Default and continuing defaults under the Mezzanine Investment Documents, 27 Funding sent written notice to Obligors and demanded payment in full of the balance due of $3,029,384.10 as of October 1, 2020 plus all other sums due and owing under the Mezzanine Investment Documents. Despite said demands, Obligors did not pay the amounts due under the Mezzanine Investment Documents and did not otherwise cure the Forbearance Default.

**27 Funding's Commencement of a State Court Action**

38. On or around October 23, 2021, 27 Funding commenced a civil against the Debtor and the Obligors entitled 27th Street Funding LLC v. 25-16 37 Ave Owners LLC et. al., (Case No. 655611/2020) pending in the Supreme Court of the State of New York, New York County; (the "State Court Action").

39. On or around May 3, 2021, 27 Funding assigned all of its rights under the Mezzanine Investment Documents and its claims in the State Court Action to LIC Mezz LLC ("LIC Mezz").

40. Thereafter, LIC Mezz served and published a notice of a public sale of the collateral securing the Debtor's obligations under the Mezzanine Investment Documents, This collateral was 100% of all issued and outstanding non-preferred limited liability company membership interests in the Debtor, which was owned by 25-16 Mezz (the "Collateral"). The sale of the Collateral pursuant to the New York State Uniform Commercial Code was scheduled to be conducted on Tuesday, August 24, 2021, at 1:00 p.m (the "UCC Sale").

41. LIC's Mezz assigned its right to its credit bid at the UCC Sale to Sawmill

Road Partners, LLC ("Sawmill"). Despite the efforts of the broker retained by LLC Mezz to market and sell the Collateral at the UCC Sale, there were no bidders at the public auction. Therefore, Sawmill became the owner of all of the outstanding non-preferred limited liability company membership interests in the Debtor.

## **Commencement of this Chapter 11 Case**

42. On June 8, 2020 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor continues to operate its business and manage its properties as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

## **APPLICATION FOR A RULE 2004 EXAMINATION**

43. Immediately after the commencement of this case, counsel for the Debtor sent Leon a demand for all of the Debtor's books and records since he was the individual in control of the Debtor and the development project, during the pre-petition period. Leon agreed to produce that which he had but stated that he believed most of the relevant documents concerning the Debtor's liabilities and executory contracts were in the possession of Penta which had been the construction manager during most of the development project.

44. Based upon Leon's statement and the fact that Leon has not yet produced any documents, the Debtor deemed it necessary and appropriate to file this application seeking to obtain documents under pursuant to Bankruptcy Rule 2004.

45. Pursuant to Bankruptcy Rule 2004, on motion of a party in interest the Court may order an entity to produce documents relating to its acts, conduct, property, liabilities

and financial condition. Fed. R. Bankr. P. 2004(a),(c). Furthermore, Bankruptcy Rule 2004(b) provides that the scope of examination may also relate to "the source of any money or property acquired or to be acquired by the debtor for purposes of consummating a plan and the consideration given or offered therefor, and any other matter relevant to the case or to the formulation of a plan." Fed. R. Bankr. P. 2004(b).

46. Bankruptcy Rule 2004 provides that "[o]n motion of any party in interest, the court may order the examination of any entity . . . . [as to] the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate . . . ." FED. R. BANKR. P. 2004(a), (b); see In re Corso, 328 B.R. 375, 383 (E.D.N.Y. 2005) (noting that "the scope of this examination is broader than discovery permitted under the Federal Rules of Civil Procedure" (citations omitted)); Martin v. Keybank of New York, 208 B.R. 807, 810 (N.D.N.Y. 1997) (observing "general rule [] that the scope of a Rule 2004 examination is very broad and great latitude of inquiry is ordinarily permitted" (citation omitted)); see also In re CENA's Fine Furniture, Inc., 109 B.R. 575, 577 n.2 (E.D.N.Y. 1990) ("The scope of a Rule 2004 examination is unfettered and broad . . . .Examinations under Rule 2004 are allowed for the purpose of discovering assets and unearthing frauds." (citation omitted)); In re Atlantis B.V., Case No. 10-12308 (MG), 2010 Bankr. LEXIS 4243, at *10 (Bankr. S.D.N.Y. Nov. 24, 2010) (noting "[i]t is well established that the scope of a Rule 2004 examination is very broad" (citation omitted)); In re Parikh, 397 B.R. 518, 525–26 (Bankr. E.D.N.Y. 2008) ("A Rule 2004 examination has been likened to a 'fishing expedition,' the scope of which is

broad. . . . The primary purpose of allowing broad discovery in Rule 2004 is to expedite the locating of assets of the estate." (citations omitted)).

47. Although the Debtor and its proposed counsel were able to prepare and file schedules and statement of financial affairs. The Debtor and the undersigned proposed counsel need to make sure that they have in their possession all of the Debtor's books and record so that they properly administer the Debtor's assets and have a full knowledge of the Debtor's creditors and estate. The Debtor submits that it is necessary to effectuate a turnover of all of the books and records relating to the Debtor's assets and liabilities and the development project (the "Books and Records") from Leon and Penta, and if necessary, to examine Leon and Penta under oath.

48. Therefore, by this application, the Debtor is seeking authority to issue separate subpoena to both Leon and Penta since they both may be in possession of different books and records of the Debtor due to their separate roles in the functioning of the Debtor and the development project.

49. Under the 2004 Order, responsive documents are to be turned over to the Debtor's undersigned counsel by the date set forth in the subpoena issued in accordance with Federal Rule of Civil Procedure 45(a)(1)(A), made applicable by Bankruptcy Rules 9016 and 2004 ("Document Subpoena"). The Document Subpoena will provide Penta and Leon not less than twenty-one (21) days from service of the Document Subpoena for the production of the records, documents and electronic files requested in the 2004 Order. Furthermore, the Debtor respectfully requests that service of the Document Subpoena and

the 2004 Order by overnight mail upon Penta and Leon at their last known addresses and by electronic mail be deemed good and proper service of the Document Subpoena.

50. Under the 2004 Order, Penta and Leon shall be required, if necessary, to appear separately for examinations on a date set forth in a subpoena issued in accordance with Federal Rule of Civil Procedure 45(a)(1)(B), made applicable by Bankruptcy Rules 9016 and 2004 ("Examination Subpoena"). The Examination Subpoena will provide Penta and Leon not less than twenty-one (21) days from service of the Examination Subpoena for the examination. Furthermore, the Debtor respectfully requests that service of the separate Examination Subpoena and the 2004 Order by overnight mail upon Penta and Leon at their last known address and by electronic mail be deemed good and proper service of the Examination Subpoena.

51. No previous application or motion for the relief requested herein has been made to this or any other Court.

**WHEREFORE**, the Debtor respectfully requests that this Court enter an Order, a copy of which is attached hereto as **Exhibit "A"**, consistent with the relief requested herein and grant it such other and further relief as this Court deems just and proper.

Dated: New York, New York
November 1, 2021

                                        **SHAFFERMAN & FELDMAN LLP**
                                        **Proposed Counsel for the Debtor**
                                        **137 Fifth Avenue, 9th Floor**
                                        **New York, New York 10010**
                                        **(212) 509-1802**
                                        **By: /S/ Joel M. Shafferman**
                                              **Joel M. Shafferman**