**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
In re:                                                    Chapter 11

**25-16 37th AVE OWNERS, LLC,**                           Case No:  21-42662-jmm

                                Debtor.
-----------------------------------------------------------X



# PLAN OF LIQUIDATION OF 25-16 37TH AVE OWNERS, LLC



**SHAFFERMAN & FELDMAN LLP**
**Attorneys for the Debtor**
137 Fifth Avenue, 9th Floor
New York, New York 10010
Tel. No.:  212-603-6300

**Joel M. Shafferman, Esq.**

**Dated:**  New York, New York
         December 15, 2021


1

**25-16 37th Ave Owners, LLC,** the debtor and debtor in possession (the "Debtor"), proposes the following plan of liquidation (the "Plan") pursuant to sections 1121(a), 1122 and 1123 of title 11 of the United States Code.

**ARTICLE 1**

**DEFINITIONS**

Unless the context otherwise requires (i) the following terms shall have the following meanings when used in this Plan; (ii) any capitalized term that is used in this Plan and not defined in this Article 1 but that is defined in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning set forth therein; (iii) terms stated in the singular shall include the plural and vice versa; (iv) pronouns stated in the masculine, feminine or neuter gender shall include the masculine, the feminine and the neuter; (v) all section, article and exhibit references in the Plan are to the respective section of, article of or exhibit to the Plan; (vi) any reference to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions, means that such document shall be substantially in such form or substantially on such terms and conditions except as stated otherwise in the Plan; (vii) any reference to an existing document or exhibit filed or to be filed means such document or exhibit, as it may have been or may be amended, modified or supplemented; (viii) the words "herein", "hereof", "hereto" or "hereunder" and other words of similar import refer to the Plan in its entirety rather than to only a particular portion of the Plan; (ix) the rules of construction set forth in section 102 of the Bankruptcy Code shall govern construction of the Plan; and (x) any reference contained herein to the Bankruptcy Code, or to any section of the Bankruptcy Code, refers to the Bankruptcy Code, or such section of the Bankruptcy Code, as it is existing and effective on the Petition Date, except to the extent, if any,

that any post-Petition Date amendment to the Bankruptcy Code applies retroactively to cases filed on the Petition Date.

**"Administrative Bar Date"** means the Closing Date.

**"Administrative Claim"** means a Claim for, or request for payment of, an Administrative Expense (i) as to which no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or (ii) as to which any objection has been resolved by a Final Order allowing such claim in whole or in part, to the extent such claim is Allowed.

**"Administrative Expense"** means any cost or expense of administration of this Case, other than Bankruptcy Fees, allowable under sections 503(b), 330 or 331 of the Bankruptcy Code.

**"Administrative Tax Claim"** means an Administrative Claim for a tax due to a Governmental Unit.

**"Allowed Claim"** means a Claim or any portion thereof against the Debtor that has not been disallowed pursuant to a Final Order and is not a Disputed Claim and (i) with respect to which a Proof of Claim has been timely filed with the clerk of the Bankruptcy Court or, (ii) if no Proof of Claim has been filed, that has been or hereafter is listed by the Debtor in the Schedules as liquidated in amount and not disputed or contingent.

**"Allowed Interest"** means an Interest in the Debtor that has not been disallowed and is not a disputed Interest with respect to which (i) a Proof of Interest has been timely filed or, (ii) if no Proof of Interest has been timely filed, that has been or hereafter is listed by the Debtor in the Schedules.

**"Available Cash"** means the sum of Cash remaining in the Debtor's Estate.

3

"**Bankruptcy Code**" means title 11 of the United States Code, as amended from time to time and effective as to cases filed on the Petition Date.

"**Bankruptcy Court**" means the United States Bankruptcy Court for the Southern District of New York or the United States District Court for the Eastern District of New York to the extent it withdraws the reference over all or any portion of these Chapter 11 Cases pursuant to section 157(d) of title 28 of the United States Code.

"**Bankruptcy Fees**" means all fees and charges assessed against the Estate under section 1930 of title 28 of the United States Code.

"**Bankruptcy Rules**" means (i) the Federal Rules of Bankruptcy Procedure, and (ii) the Local Bankruptcy Rules for the United States Bankruptcy Court for the Eastern District of New York, in effect on the Petition Date, together with any and all amendments and modifications thereto that were subsequently made applicable to these Chapter 11 Cases.

"**Bar Date**" means the December 31, 2021, the date set by the Court which is the deadline for creditors to file proofs of claim with the Bankruptcy Court.

"**Bid Procedures**" means the Bidding Procedures for the Property, as approved by the Bankruptcy Court.

"**Business Day**" means any day other than a Saturday, Sunday, or other day on which commercial banks in New York, New York are authorized or required by law to close, or other Legal Holiday.

"**Case**" means the case under chapter 11 of the Bankruptcy Code commenced in the Bankruptcy Court on the Petition Date and styled *25-16 37th Ave Owners, LLC*, Case No. 21-42662-jmm.

**"Cash"** means, on any Business Day, immediately available funds, in United States dollars, which may be spent or transferred without restriction no later than the next Business Day.

**"Claim"** means a "claim," as defined in section 101(5) of the Bankruptcy Code.

**"Class"** means a category of substantially similar Allowed Claims or Allowed Interests as established pursuant to article 3 of the Plan.

**"Closing Date"** means the date of the closing of the sale of the Property.

**"Confirmation"** means the entry of the Confirmation Order on the docket of the Chapter 11 Case.

**"Confirmation Date"** means the date on which the Confirmation Order is entered by the Bankruptcy Court.

**"Confirmation Order"** means an Order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, in form and substance reasonably satisfactory to the Debtor.

**"Creditor"** means a Holder of an Allowed Claim.

**"Cure Amount"** means any amount required, pursuant to sections 365(b)(1)(A) and 365(b)(1)(B) of the Bankruptcy Code, to cure any defaults or compensate the non-debtor party to any Executory Contract or Unexpired Lease for any actual pecuniary loss resulting from a default in respect of an Executory Contract or Unexpired Lease.

**"Debtor"** means 25-16 37th Ave Owners, LLC

**"Disbursing Agent"** means Shafferman & Feldman LLP, the Debtor's proposed counsel.

**"Disclosure Statement"** means the Disclosure Statement for the Plan of Liquidation of 25-16 37th Ave Owners, LLC, including all exhibits, attachments or amendments thereto, approved by Final Order of the Bankruptcy Court.

**"Disputed Claim"** means (a) any claim that is listed in the Schedules as disputed, contingent or unliquidated and with respect to which no Proof of Claim has been filed; (b) any Claim that has not been disallowed and with respect to which an objection to the allowance thereof, in whole or in part, has been interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, to the extent that any such objection has not been resolved by a Final Order; provided however, that until the earlier of (i) the filing of an objection to a Proof of Claim or (ii) the last date to file objections to Claims as established by the Plan or by Final Order, a Claim shall be deemed to be a Disputed Claim in its entirety if; (A) the amount specified in the Proof of Claim exceeds the amount of any corresponding Claim listed in the Schedules; (B) any corresponding Claim listed in the Schedules has been scheduled as disputed, contingent or unliquidated; or (C) no corresponding Claim has been listed in the Schedules. To the extent that a Claim is held by an Insider, the Claim will be a Disputed Claim unless and until that Claim has been settled, withdrawn, or has been determined by a Final Order.

**"Disputed Claims Reserve"** means the segregated account or accounts established by the Disbursing Agent pursuant to Section 7.8 of the Plan. All references to a banking institution and/or a domestic bank, for the purposes of (i) addressing a Disputed Claims Reserve, (ii) a domestic bank, refer only to a banking institution that is an authorized depository in the Eastern District of New York.

**"Effective Date"** means the Closing Date of the sale of the Property or such other date as may be designated by the Debtor.

**"Estate"** means the Estate of the Debtor created on the Petition Date pursuant to section 541 of the Bankruptcy Code.

**"Executory Contract"** means an executory contract within the meaning of section 365 of the Bankruptcy Code.

**"Final Order"** means an order entered by the Bankruptcy Court or any other court exercising competent jurisdiction over the subject matter and the parties that has not been reversed, amended or stayed and as to which (i) no appeal, certiorari proceeding or other review, reconsideration or rehearing has been requested or is still pending, and (ii) the time for filing a notice of appeal or petition for certiorari or further review, reconsideration or rehearing has expired.

**"Governmental Unit"** means the United States; State; Commonwealth, District; Territory; municipality; foreign state; department; agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under this title), a State, a Commonwealth, a District, a Territory a municipality, or a foreign state; or other foreign or domestic government.

**"Holder"** means a Person holding a Claim or Interest.

**"Insider"** means an insider of the Debtor within the meaning of section 101(31) of the Bankruptcy Code.

**"Insider Claim"** means an Allowed Claim held by or on behalf of an Insider or any successor in interest or assignee thereof.

**"Interest"** means an equity interest in the Debtor.

**"Interest Holder"** means the Holder of an Allowed Interest in the Debtor.

**"Legal Holiday"** means a "Legal Holiday" as that term is defined in Bankruptcy Rule 9006(a).

**"LIC"** means LIC Senior Debt, LLC.

**"LIC Contribution"** means Cash to be funded by LIC, to the extent necessary to create a fund the payment of Statutory Fees, Allowed Administrative Claims, Allowed Professional Fee Claims, Allowed Non Tax Priority Claims, Allowed Priority Tax Claims, Allowed Class 1 Claims, and to facilitate a Pro Rata distribution of the sum of $100,000, to holders of Allowed Class 5 General Unsecured Claims should there be insufficient available Cash from other sources under the Plan. The LIC Contribution shall be deposited into an escrow account to be maintained by Disbursing Agent prior to the hearing on confirmation of the Plan.

**"LIC's Secured Claim"** means the Allowed Secured Claim of the LIC on account of the Note and Mortgage, in the aggregate principal amount of $12,996,870.43, collectively, together with accrued and unpaid interest but without the addition of any fees, expenses and disbursements, including attorneys' fees and related expenses, and other charges, amounts and costs of owing

**"LIC Mortgage"** means, together,(i) that certain Building Loan Mortgage and Security Agreement given by the Debtor to Popular dated December 29, 2016 and recorded on February 3, 2017 in CRFN 2017000048908 in the Office of the City Register of the City of New York, which Building Loan Mortgage and Security Agreement was modified and extended by a Building Loan Mortgage Modification and Extension Agreement made by and between Borrower and Popular Bank, dated June 27, 2019 and recorded on July 22, 2019 in CRFN 2019000230966 in

the Office of the City Register of the City of New York (as amended, modified or replaced from time to time); (ii) that certain Consolidation, Modification and Extension Agreement given by the Debtor to Popular dated December 29, 2016 and recorded on February 3, 2017 in CRFN 2017000048908 in the Office of the City Register of the City of New York, which Building Loan Mortgage and Security Agreement was modified and extended by a Building Loan Mortgage Modification and Extension Agreement made by and between Borrower and Popular Bank, dated June 27, 2019 and recorded on July 22, 2019 in CRFN 2019071800645003 in the Office of the City Register of the City of New York (as amended, modified or replaced from time to time); and (iii) all such ancillary and other related agreements made by the Debtor and Banco Popular thereto, including but not limited to any and all assignments of rents, UCC financing statements or any other agreements or documents evidencing a security interest in the Debtor's assets.

**"LIC Note"** means collectively, each and every agreement, promissory note, including any amendment or modification thereof, or allonge thereto and/or any assignment evidencing a Secured Claim against the Debtor as assigned and now held by Secured Creditor, but originally held by Banco Popular, in the original principal amounts of $8,036,665.00 for that certain Amended and Restated Project Loan Note and $9,543,335.00 for that Amended certain Amended and Restated Building Loan Note, both notes dated as of June 27, 2009 and effective as of March 29,.

**"Lien"** means any charge against or interest in property to secure payment of a debt or performance of an obligation.

**"New York City Real Estate Tax Claim"** means any Secured Claim of the City of New York for real estate taxes.

"**Order**" means an order of the Bankruptcy Court.

"**Other Priority Claim**" means any Claim accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Claim.

"**Person**" means a person as defined in 11 U.S.C. § 101(41).

"**Petition Date**" means October 19, 2021, the date on which this Case was commenced by the filing of a voluntary petition for relief under Chapter 11 of the Bankruptcy Code by the Debtor.

"**Plan**" means this Liquidating Plan of Reorganization of 25-16 37th Ave Owners, LLC, as it may be amended, supplemented or modified from time to time, including any exhibits or schedules annexed hereto or required to be filed with the Bankruptcy Court pursuant hereto.

"**Post-Effective Date Debtor**" mean the Debtor from and after the Effective Date.

"**Priority Non-Tax Claim**" means that portion of an Allowed Claim entitled to priority in payment under Bankruptcy Code Section 507(a) or (b), other than a Priority Tax Claim, an Administrative Tax Expense Claim, a Secured Claim, or Bankruptcy Fees.

"**Priority Tax Claim**" means an Allowed Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

"**Professional**" means all professionals employed by the Debtor under sections 105, 327 or 330 of the Bankruptcy Code to render professional services in the Chapter 11 Case pursuant to a Final Order.

**"Professional Fees"** means compensation for services rendered, and reimbursement of expenses incurred, by Professionals through the Confirmation Date, as allowed and awarded by Final Order following application, in accordance with sections 330 and 331 of the Bankruptcy Code.

**"Professional Fee Claim"** means a Claim for compensation for services rendered, and reimbursement of expenses incurred by Professionals as awarded by Final Order following application in accordance with sections 330 and 331 of the Bankruptcy Code.

**"Proof of Administrative Claim"** means a request for payment of an Administrative Expense (excluding Professional Fee Claims) filed pursuant to section 503 of the Bankruptcy Code.

**"Proof of Claim"** means a proof of Claim filed pursuant to section 501 of the Bankruptcy Code and Part III of the Bankruptcy Rules.

**"Property"** means the real property and improvements thereon located at 25-12 and 25-16 37th Avenue Long Island City, New York 11101.

**"Pro Rata"** means the proportion that an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of all Allowed Claims or Allowed Interests in such Class.

**"Purchaser"** means the entity, not related to the Debtor, to whom the Property is sold pursuant to the Sale Transaction, other than LIC's exercising its right to credit bid.

**"Released Parties"** shall have the meaning set forth in section 8.2 of this Plan.

**"Reorganized Debtor"** means the Debtor after the Effective Date.

**"Sale Proceeds"** means the proceeds from the Sale Transaction net of closing costs including, but not limited to, the Debtor's brokerage fees, title costs and other ordinary and necessary costs of, or credits related to, the transfer of title to the Property.

**"Sale Proceeds"** means the proceeds the Debtor receives from the sale of the Property to Purchaser.

**"Sale Transaction"** means the sale of the Property to be conducted by public auction in accordance with the Bid Procedures, at which auction any party holding an Allowed Secured Claim arising from a Lien on the Property shall be entitled to credit bid to the extent permitted by the Terms and Conditions of Sale.

**"Schedules"** mean the schedules of assets and liabilities, any amendments with respect thereto, and the Statement of Financial Affairs filed by the Debtor with the Bankruptcy Court in accordance with section 521(1) of the Bankruptcy Code and Rule 1007 of the Bankruptcy Rules and any amendments thereto.

**"Secured Claim"** means an Allowed Claim, including all amounts, if any, allowed pursuant to section 506(b) of the Bankruptcy Code, to the extent that it is secured by a Lien on Property in which the Estate has an interest or that is subject to set-off under section 553 of the Bankruptcy Code, to the extent of the value of the Claim Holder's interest in the Estate's interest in such Property or to the extent of the amount subject to set-off, as applicable, as determined by a Final Order pursuant to section 506(a) of the Bankruptcy Code or as provided for in the Plan.

**"Stalking Horse Contract"** means the Purchase and Sale Agreement, and any amendments thereto between the Debtor, as seller and LIC Senior Debt, LLC or its designee, as purchaser; both being non-relater parties.

**"Statutory Fees"** mean all fees and charges assessed against the Estate under Section 1930 of title 28 of the United States Code.

**"Transfer Taxes"** means, without limitation, (i) New York County or other applicable local Real Property Transfer Taxes, (ii) New York State mortgage recording taxes imposed under Article 11 of the New York State Tax Law, and (iii) and any and all other stamp taxes or similar taxes, which, but for the applicability of section 1146(a) of the Bankruptcy Code would be applicable, to any transfer made in accordance with, pursuant to, or in furtherance of the Plan.

**"Unimpaired"** means, with respect to a Claim, Interest or Class of Claims or Interests, that such Claim or Interest is not "impaired" within the meaning of section 1123(a)(4) and 1124 of the Bankruptcy Code.

**"Unsecured Claim"** means a Claim against the Debtor that is not an Administrative Claim, an Administrative Tax Claim, a Bankruptcy Fee, a Priority Tax Claim, a Priority Non-Tax Claim, a Secured Claim.

**"Unsecured Creditor"** means the Holder of an Unsecured Claim.

**"Unexpired Contract"** means an unexpired executory contract within the meaning of section 365 of the Bankruptcy Code.

## ARTICLE 2

### TREATMENT OF UNCLASSIFIED CLAIMS

Pursuant to section 1123(a)(1) of the Bankruptcy Code, the Plan does not classify Administrative Claims or Allowed Priority Tax Claims.  Such Claims, to the extent Allowed Claims, shall receive the treatment provided in this article 2 in full satisfaction, release and discharge thereof.

2.1     **Administrative Bar Date**.  Except as otherwise provided in sections 2.2, 2.3 and 2.4 of the Plan, requests for payment of Administrative Expenses must be filed no later than the

Administrative Bar Date.  Holders of Claims for payment of Administrative Expenses that do not file requests for the payment of Administrative Expenses on or before the Administrative Bar Date, shall be forever barred from asserting such Claims against the Debtor, its Estate or its property.

2.2    **Professionals' Compensation and Reimbursement**.  (a)  No later than three days prior to the Effective Date, each Professional shall provide the Debtor with an estimate of the total amount of compensation and expenses for which such Professional expects to seek final compensation pursuant to section 330 of the Bankruptcy Code.  Such estimates shall include estimated sums for the preparation and prosecution of any application for final compensation.  Upon receipt of such notice, Debtor shall segregate sufficient cash to pay all such estimated compensation and expenses in full unless otherwise agreed to by the Debtor and such Professionals; *provided, however,* that the failure of a Professional to provide such an estimate shall relieve the Debtor of its obligation to segregate funds for the payment therefore, but shall not relieve the Debtor of the obligation with respect to any allowed compensation and expense reimbursement.

(b)    All Professionals shall file final applications for approval of compensation and reimbursement of reasonable and necessary expenses pursuant to section 330 of the Bankruptcy Code no later than 60 days following the Effective Date.  Any such application timely filed shall be deemed to be an Administrative Claim, subject to the entry of a Final Order by the Bankruptcy Court approving such application.  Objections to any Professional's application for compensation or reimbursement must be timely filed and served upon such Professional, and upon the Debtor and/or the Disbursing Agent in accordance with the Bankruptcy Rules.  Any such objection not timely filed and served shall be deemed to have been waived, *provided, however*, that the Office of the United States Trustee may seek with the consent of the Debtor's retained

professionals an extension of the deadline for filing any objection. Upon entry of a final order approving an application, the fees shall be paid within three (3) days thereafter or in accordance with an agreement between the parties with respect thereto.

2.3 **Administrative Claims**. Subject to the provisions of article 8 of the Plan with respect to Disputed Claims, each Administrative Claim, to the extent not previously paid, shall be paid by the Disbursing Agent in Cash, from the Sale Proceeds or the LIC Contribution, in full on (i) the later of (x) the Effective Date, (y) the date payment of such Claim is due under the terms thereof or applicable law, or (z) three business days after such Claim becomes an Administrative Claim or (ii) as may be otherwise mutually agreed in writing between the Debtor and the holder of such Claim; *provided, however,* that any Administrative Claim incurred by the Debtor in the ordinary course of its business shall be paid in full or performed by the Debtor in accordance with the terms and conditions of the particular transaction giving rise to such Administrative Claim and any agreements relating thereto

2.4 **Administrative Tax Claims**. Subject to the provisions of article 8 of the Plan with respect to Disputed Claims, all Administrative Tax Claims held by Governmental Units shall be paid, in Cash, in full either (i) on or prior to the Effective Date, or (ii) upon such other terms as may be agreed to, in writing, between the Debtor and such Governmental Units on or before the Effective Date.

2.5 **Priority Tax Claims.** Except to the extent that the holder of a particular Allowed Priority Tax Claim agrees to a different treatment thereof, each holder of an Allowed Priority Tax Claim shall be paid in Cash from the Sale Proceeds or the LIC Contribution in full on

the later of (i) the Effective Date, or (ii) three business days after such Claim becomes an Allowed Priority Tax Claim

      2.6    **Bankruptcy Fees.**  All fees and charges assessed against the Debtor under section 1930 of title 28 of the United States Code and any applicable interest thereon shall be paid by the Disbursing Agent, in Cash, from the Sale Proceeds or the LIC Contribution, in full as required by statute and until the closing, conversion or dismissal of this Case, whichever is earlier, the Debtor shall continue to be responsible for the payment of any such fees and charges.

## ARTICLE 3

### CLASSIFICATION OF CLAIMS AND INTERESTS

Except as otherwise provided in article 2, Allowed Claims and Allowed Interests are classified as set forth in this article 3. A Claim or Interest is in a particular Class designated herein only to the extent such Claim or Interest (i) fits within the description of such Class and is in such other and different Class or Classes to the extent that the remainder thereof fits within the description of such other Class or Classes and (ii) has not been paid, released or otherwise satisfied prior to the Effective Date.

      3.1    **Class 1 - Priority Claims.**  Class 1 consists of all Priority Claims.

      3.2    **Class 2- New York City Secured Claims**.  Class 2 consists of the Allowed Secured Claims of the City of New York.

      3.3    **Class 3 –LIC Secured Claim.** Class 3 consists of the Claim held by LIC on account of principal and interest, and other related charges and attorney's fees to the extent such claim constitutes a Secured Claim in accordance with sections 506(a) and 506(b) of the Bankruptcy Code.

3.4     **Class 4 - Insured Claims.**  Class 4 consists of all Insured Claims.

3.5     **Class 5 – General Unsecured Claims.**  Class 4 consists of all Unsecured Claims, including Deficiency Claims, if any exist.

3.6     **Class 6 - Equity Interests.**  Class 6 consists of all Allowed Interests in the Debtor.

ARTICLE 4

**IDENTIFICATION OF IMPAIRED AND UNIMPAIRED CLAIMS AND TREATMENT OF CLAIMS AND INTERESTS**

Allowed Claims in Classes 1 and 2 are unimpaired and shall receive the following treatment under the Plan in full satisfaction, release and discharge thereof:

4.1     **Class 1 - Priority Claims.**  Class 1 consists of Priority Claims. Subject to the provisions of Article 7 of the Plan, with respect to Disputed Claims, in full satisfaction, release and discharge of the Priority Claims, the holders of Priority Claims shall receive the following treatment: on the Effective Date, or as soon as practicable after such Claims become Allowed Claims, each holder of a Priority Claim shall receive payment from the Disbursing Agent, (i) in Cash, from the Sale Proceeds or the LIC Contribution, in the full amount of its Priority Claim, or (ii) as may be otherwise agreed in writing between the Debtor and the holder of such Claim, from the Sale Proceeds.

4.2     **Class 2 – New York City Secured Claims**. Class 2 consists of the secured claims of the City of New York. Subject to the provisions of Article 7 of the Plan, with respect to Disputed Claims, in full satisfaction, release and discharge of the New York City Secured Claims, on the Effective Date the holder of the Allowed New York City Secured Claims shall receive a Cash distribution from the Sale Proceeds or the LIC Contribution equal to the full Allowed amount of the

17

Allowed New York City Secured Claims (calculated through the Effective Date) in accordance with section 1124(1) of the Bankruptcy Code.

**Allowed Claims in Classes 3, 4, and 5, and interests in Class 6 are impaired and shall receive the following treatment under the Plan in full satisfaction, release and discharge thereof:**

4.3 **Class 3 –LIC Secured Claim**.  Class 3 consists of the claim of the LIC Secured Claim.

Subject to the provisions of Article 7 of the Plan, with respect to Disputed Claims , in full satisfaction, release and discharge of the Class 3 LIC Secured Claim, LIC shall receive the following treatment: (i) to the extent any Cash from the Sale Proceeds is remaining after payment of Administrative Claims, Professional Fee Claims, Non Tax Priority Claims, Priority Tax Claims, Class 1 Claims and Class 2 Claims, on the Effective Date, or as soon as possible after the LIC Secured Claim becomes an Allowed Claim, LIC shall receive from the Disbursing Agent remaining Cash, if any, up to the full amount of its Allowed Secured Claim, inclusive of post-petition interest, attorneys fees, costs and expenses under 11 U.S.C. Section 506(b) , or (ii) if the Property is sold to LIC (or its designee) then on the Effective Date, LIC, or its nominee, shall become the Purchaser and take title to the Property free and clear of all Liens, except permitted encumbrances as determined by LIC and fund the LIC Contribution. If the Sale Proceeds are insufficient to pay the Class 3 Claim in full, the deficiency amount shall be treated as a Class 5 Claim. The Class 3 LIC Secured Claim is Impaired, and LIC is entitled to vote to accept or reject the Plan.

4.4. **Class 4 - Insured Claims.** Subject to the provisions of Article 7 of the Plan with respect to Disputed Claims, in full satisfaction, release and discharge of all Allowed Insured

Claim, the holders of Insured Claims shall retain their Claims against the Debtor solely to the extent of applicable insurance coverage.

4.5 **Class 5 – General Unsecured Claims**. Class 5 consists of General Unsecured Claims. Subject to the provisions of Article 7 of the Plan with respect to Disputed Claims, in full satisfaction, release and discharge of Class 5 General Unsecured Claims, the holder of such Claims shall receive the following treatment: on the Effective Date, or as soon as possible after such Claims become Allowed Claims, each holder of a Class 5 General Unsecured Claim shall receive from the Disbursing Agent, unless otherwise agreed in writing between the Debtor and the holder of such Claim, its Pro Rata payment of the remaining Cash from the Sale Proceeds after payment of Statutory Fees, Administrative Claims, Professional Fee Claims, Non Tax Priority Claims, Priority Tax Claims, Class 1 Claims, Class 2 Claims, and the Class 3 Claims; provided, however, should LIC become the Purchaser, LIC will fund the LIC Contribution for the Pro Rata distribution of up to the sum of $100,000 to Class 5 General Unsecured Claims pursuant to this Section 4.5 of the Plan. Class 5 Claims are Impaired, and the holders of General Unsecured Claims are entitled to vote to accept or reject the Plan.

4.6 **Class 6 – Equity Interests**. Class 6 consists of Allowed Interests in the Debtor.

On the Effective Date, all Equity Interest Holders shall retain the value of their Interests that may exist as to any remaining balance of Cash, if any, after payment in full of all Allowed Claims and Classes of Claims against the Debtor. Interests of Equity shall be extinguished, and the Debtor shall remain responsible for either managing or winding down its own affairs without

interfering with the Disbursing Agent's performance under the Plan. Class 6 Equity Interests are not receiving any distribution under the Plan, and Interest Holders are deemed to reject the Plan.

ARTICLE 5

TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

5.1     **Assumption and Assignments of Executory Contracts and Unexpired Leases.**  On the Effective Date, all Executory Contracts and Unexpired Leases to which Debtor is a party, unless a separate motion to assume is made, shall be deemed rejected in accordance with Section 365 of the Bankruptcy Code.

5.2     **Rejection Claims.**  Allowed Claims arising from the rejection of any Executory Contract or Unexpired Lease of the Debtor pursuant to section 5.1 of the Plan shall be treated as Unsecured Claims.

5.3     **Bar to Rejection Claims.**  A Proof of Claim with respect to any Unsecured Claim for damages arising from the rejection of an Executory Contract pursuant to section 5.1 of the Plan shall not be timely filed unless it is filed with the Bankruptcy Court and served so that it is received by the Debtor within 30 days after the later of (i) the date of entry of a Final Order approving such rejection (unless such Final Order expressly provides a Bar Date with respect to such Claim, in which event no Proof of Claim with respect to such Claim shall be deemed timely unless it is filed with the Bankruptcy Court and served in the manner provided in such Final Order), or (ii) the Confirmation Date.  Any such Claim not timely filed and served shall be forever barred from assertion and may not be enforced against the Debtor, or its successors or their respective properties.

20

**Article 6**

**Implementation of the Plan**

6.1     **The Sale Transaction and Plan Funding**. Payments under the Plan will be paid from either the Sale Proceeds, Cash of the Debtor, and/or the LIC Contribution. The Sale Transaction will be implemented pursuant to the Bid Procedures. Prior to or on the Effective Date, the Property shall be sold to the Purchaser, free and clear of all Liens, Claims and encumbrances (except permitted encumbrances as determined by the Purchaser), with any such Liens, Claims and encumbrances to attach to the Sale Proceeds and disbursed in accordance with the provisions of the Plan. LIC shall have the right, in its sole discretion, but not the obligation, to provide for an assignment of the LIC Mortgage and an assumption by Purchaser in connection with the Sale Transaction, such LIC Mortgage shall be treated as having zero balance due and owing and no sums advanced and such taxing authority shall not levy any mortgage recording or stamp tax for the recordation of LIC Mortgage, in amount of $17,580,000, to LIC or any subsequent assignee. Except as set forth elsewhere in the Plan, all distributions to be made on the Effective Date shall be transferred to the escrow account of the Disbursing Agent at the closing of the Sale Transaction. Only in the event that LIC or its assignee, or designee is the Purchaser of the Property by credit bid (in part or in whole), or if the Sale Proceeds are insufficient to pay the full amount of the Allowed Administrative Claims, Professional Fee Claims, Priority Tax Claims, Class 1 Claims, and Class 2 Claims, LIC shall deliver to the Disbursing Agent for distribution pursuant to the provisions of the Plan (i) Cash in an amount sufficient to pay the full amount of the Allowed Administrative Claims, Professional Fee Claims, Priority Tax Claims, Class 1 Claims, Class 2 Claims, and (ii) the LIC Contribution. Within two (2) Business Days

after entry of the Confirmation Order.

The Property will be sold "AS IS," "WHERE IS," "WITH ALL FAULTS," without any representations, covenants, guarantees or warranties of any kind or nature whatsoever and subject to, among other things, (i) any state of facts that an accurate survey may show; (ii) any covenants, restrictions and easements of record; (iii) any state of facts a physical inspection may show; (iv) any building or zoning ordinances or other applicable municipal regulations and violations thereof; and (v) environmental conditions, including, without limitation, the Property's compliance (or lack of compliance) with environmental laws and the presence or absence of underground fuel storage tanks, any hazardous materials or asbestos anywhere on the Property.

6.2     **Sale Approval**. As a part of the Sale Transaction under the Plan, and in order to ensure consummation of the Plan, the Confirmation Order shall contain the following findings of fact and conclusions of law: (i) that the terms and conditions of the Sale Transaction and the purchase agreement are fair and reasonable, (ii) that the Debtor's sale, and the Purchaser's purchase, of the Property pursuant to the Plan, is non-collusive, fair and reasonable and was conducted openly and in good faith, without any fraud, (iii) that the transfer of the Property to the Purchaser represents an arm's-length transaction and was negotiated in good faith between non-related parties as defined by 26 U.S. Code Section 1400z-2(e)(2), (iv) that the Purchaser, as transferee of the Property, is a good faith purchaser under Bankruptcy Code section 363(m) and, as such, is entitled to the full protection of Bankruptcy Code section 363(m), (v) that the Property is sold free and clear of all Liens, Claims, interests, and encumbrances pursuant to Bankruptcy Code section 1141(c), except that in the event that LIC, its assignee, or its designee

is the Purchaser, then the Property may be sold subject to its mortgage lien in the sole discretion of the Purchaser, (vi) that the Sale Transaction was not controlled by an agreement among potential purchasers, and (vii) that no cause of action exists against the Purchaser or with respect to the sale of the Property to the Purchaser. All stay provisions under Bankruptcy Rule 6004(h) or elsewhere will be waived.

6.3 **Real Estate Broker**. Subject to approval of this Court, the Debtor has retained Rosewood Realty Group, as its exclusive a real estate broker to market the Property and to conduct the auction of the Property.

6.4 **Vesting of Assets**. Except as otherwise provided in the Plan, upon the closing of the sale of the Property, the Property shall vest in the Purchaser, free and clear of all liens, Claims, and encumbrances. After the Plan has been fully administered, including payment of all Allowed Claims, fees and expenses, any remaining property of the Estate shall vest in the Reorganized Debtor free and clear of all Claims, liens, encumbrances, charges and other interests, unless otherwise provided pursuant to this Plan and the Confirmation Order.

6.5 **Exemption from Certain Taxes**. To the maximum extent provided by section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of any security and the making or delivery of any instrument of transfer under this Plan as confirmed by the Bankruptcy Court, (including an instrument of transfer executed in furtherance of the Sale Transaction), shall not be subject to tax under any law imposing a stamp tax, real estate transfer tax, mortgage recording tax, mansion tax, or similar tax due on the sale of the Property in connection with or in furtherance of the Plan as confirmed by the Bankruptcy Court and the

funding requirements contained herein and shall not be subject to any state, local or federal law imposing such tax and the appropriate state or local government officials or agents shall forego collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

6.6     **Execution of Documents**.

(a)     On the Effective Date, the Debtor and any necessary party thereto, shall execute, release, and deliver all documents reasonably necessary to consummate the transactions contemplated by the terms and conditions of the Plan.

(b)     Pursuant to sections 105, 1141(c) and 1142(b) of the Bankruptcy Code, the Disbursing Agent shall be authorized to execute, in the name of any necessary party, any estoppel certificate, or any notice of satisfaction, release or discharge of any Lien, Claim or encumbrance (including any Lien, claim or encumbrance that is to be released and satisfied under compliance with the provisions of the Plan) not expressly in the Plan and deliver such notices to any and all federal, state and local governmental agencies or departments for filing and recordation, and the Confirmation Order shall expressly so provide.

6.7     **Property Turnover at Closing**. The Debtor shall turnover possession of the Property at closing, together with all files and records pertaining to construction documents, Department of Building permits, licenses, approvals, violations, plans, drawings, specifications, leases, repair invoices, and correspondence.

6.8     **Preservation of Rights of Action**. Claims of the Debtor or its estate

against Insiders and/or former insiders will be retained by the Reorganized Debtor on behalf of the estate. Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement entered in connection with the Plan, the Debtor shall retain, and on the Effective Date shall be deemed to have assigned to the Reorganized Debtor or its designee, who may, in accordance with its determination of the best interest of the estate, enforce any claims, rights and causes of action arising under section 510 and 544 through 550 of the bankruptcy Code or any similar provisions of state law, or any statute or legal theory.

6.9 **Funding**. Except as set forth elsewhere in the Plan, all payments required to be made under the Plan shall be made by the Disbursing Agent in accordance with the terms of the Plan. Except as set forth elsewhere in the Plan, the Plan will be funded from the Sale Proceeds, any Cash turned over by the Debtor, and, if necessary, the LIC Contribution. At Closing, the Debtor shall deliver the Cash to the Disbursing Agent, and the Disbursing Agent shall segregate sufficient Cash to pay or reserve for all payments that are to be made pursuant to the terms of the Plan. The LIC Contribution shall be paid by LIC to the Disbursing Agent's IOLA account at Bank of America at the closing of the Sale Transaction. The Disbursing Agent shall retain sufficient funds in its IOLA account to make distributions as provided in the Plan on account of Allowed Claims, including Allowed Professional Fee Claims and Bankruptcy Fees.

## ARTICLE 7

### PROVISIONS GOVERNING DISTRIBUTIONS

7.1 **Disbursing Agent.** All Distributions under this Plan shall be made by the Disbursing Agent who shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.

7.2.     **Rights and Powers of the Disbursing Agent**. The Disbursing Agent shall be empowered to (i) effect all actions and execute all agreements, instruments and other documents necessary to perform its duties under this Plan, (ii) make all Distributions contemplated hereby, (iii) employ and compensate professionals to represent it with respect to its responsibilities and (iv) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to this Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

7.3.     **Timing of Certain Distributions Under the Plan**. Except as otherwise provided in this Plan, and subject to sections 8.7 and 8.8 of this Plan, any payments, distributions or other performance to be made pursuant to this Plan on account of any Disputed Claim shall be deemed to be timely made if made on the later of (i) thirty (30) days after the Closing Date and (ii) three (3) business days after such Claim becomes Allowed or (iii) such other times provided in this Plan.

7.4.     **Method of Payment**. Unless otherwise expressly agreed, in writing, all Cash payments to be made pursuant to this Plan shall be made by check drawn on a domestic bank.

7.5.     **Objection Deadline**. Unless otherwise ordered by the Bankruptcy Court, the Debtor may file and serve an objection to any Claim, other than a Claim that has already been Allowed by an Order of the Bankruptcy Court or pursuant to this Plan, on the later to occur of (i) 60 days following the Effective Date or (ii) 60 days after the date proof of such Claim or a request for payment of such Claim is filed.

7.6.     **Prosecution of Objections**. After the Effective Date, only the Debtor shall have authority to settle, compromise, withdraw or resolve objections to Claims.

7.7. **Distribution Pending Allowance**. No payment or distribution of Cash shall be made with respect to any portion of a Disputed Claim that is disputed unless and until all objections to such Disputed Claim are withdrawn or resolved by Final Order.

7.8. **Escrow of Cash Distributions**. On any date that distributions are to be made under the terms of this Plan, the Disbursing Agent shall deposit in one or more segregated accounts maintained at an authorized Southern District of New York depository, Cash equal to 100% of the Cash that would be distributed on such date on account of Disputed Claims as if each such Disputed Claim were an Allowed Claim but for the pendency of a dispute with respect thereto, including, but not limited to (i) Disputed Claims that may be entitled to treatment as Administrative Expenses or as priority claims pursuant to Sections 503 and 507 of the Bankruptcy Code, (ii) claims of Governmental Units for any tax, (iii) any amount due but not payable on the Effective Date on account of Administrative Expenses or claims entitled to priority pursuant to Sections 503 and 507 of the Bankruptcy Code, (iv) Secured Claims and (v) Unsecured Claims. The Disbursing Agent shall also segregate any interest, dividends or proceeds of such Cash. Such Cash together with any interest, dividends or proceeds thereof, shall be held in trust for the benefit of the holders of all such Disputed Claims pending determination of their entitlement thereto.

7.9. **Distribution After Allowance.** Within fifteen (15) days after the entry of a Final Order resolving an objection to a Disputed Claim, the Disbursing Agent shall distribute all Cash or other property, including any interest, dividends or proceeds thereof, to which a holder is then entitled with respect to any Disputed Claim that has become an Allowed Claim.

7.10. **Investment of Segregated Cash and Property**. To the extent practicable, the Disbursing Agent may invest any Cash or other property segregated on account of a Disputed Claim,

undeliverable distribution, or any proceeds thereof, in an authorized Southern District of New York Depository, (i) in a manner that will yield a reasonable net return taking into account the safety of the investment or (ii) in any manner permitted by Section 345 of the Bankruptcy Code; provided, however, that the Disbursing Agent shall be under no obligation to so invest such Cash or proceeds and shall have no liability to any party for any investment made or any omission to invest such Cash, other property or proceeds.

7.11. **Delivery of Distributions**. Except as provided in Sections 8.12, 8.13 and 8.14 of this Plan, distributions to holders of Allowed Claims shall be made: (1) at the addresses set forth on the respective Proofs of Claim Filed by such holders; (2) at the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related Proof of Claim; or (3) at the address reflected in the Schedules if no Proof of Claim is filed and the Disbursing Agent has not received a written notice of a change of address.

7.12. **Undeliverable Distributions**.

(a) If the distribution to the holder of any Claim is returned to the Disbursing Agent as undeliverable, no further distribution shall be made to such holder unless and until the Disbursing Agent is notified in writing of such holder's then current address. Undeliverable distributions shall remain in the possession of the Disbursing Agent until the earlier of (i) such time as a distribution becomes deliverable or (ii) such undeliverable distribution becomes an unclaimed distribution pursuant to Section 8.13 of this Plan.

(b) Until such time as an undeliverable distribution becomes an unclaimed distribution pursuant to Section 8.13 of this Plan, within thirty (30) days after the end of each calendar quarter following the Effective Date, the Disbursing Agent shall make distributions of all

Cash and property that has become deliverable during the preceding quarter. Each such distribution shall include the net return yielded from the investment of any undeliverable Cash from the date such distribution would have been due had it then been deliverable to the date that such distribution becomes deliverable.

(c) Nothing contained in this Plan shall require the Disbursing Agent to attempt to locate any holder of an Allowed Claim.

7.13. **Unclaimed Distributions**. Any Cash or other property to be distributed under this Plan that is unclaimed shall be reallocated to those Creditors with Allowed Claims in the same class of Creditor whom such distribution was initially made. Such reallocation shall be made after the expiration of (i) three months after the Effective Date and such funds remain unclaimed or (ii) thirty days after an Order allowing the Claim of that Entity becomes a Final Order, and such Entity's claim shall be deemed to be reduced to zero.

7.14. **Set-offs**. The Disbursing Agent may, but shall not be required to, set-off against the distributions to be made pursuant to this Plan the claims, obligations, rights, causes of action and liabilities of any nature that the Debtor may hold against the holder of an Allowed Claim, provided, however, that neither the failure to effect such a set-off nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor of any such claims, obligations, rights, causes of action and liabilities that the Debtor has or may have against such holder. Any parties effected by a set-offs shall receive written notice of such intended set-off three days prior to such set-off.

7.15.    **Disallowance**.  Except as provided in Section 6.1 hereof, any Disputed Claim for which no proof of claim has been filed on or prior to the Bar Date shall be disallowed and expunged as of the Effective Date.

## ARTICLE 8

### RELEASES, INJUNCTION AND EXCULPATION

8.1    **Injunction.**  Except (a) as otherwise provided in the Plan; or (b) as otherwise provided under the Confirmation Order entered by the Bankruptcy Court, the entry of the Confirmation Order shall forever stay, restrain and permanently enjoin with respect to any claim or interest held as of the Effective Date: (i) the commencement or continuation of any action, the employment of process, or any act to collect, enforce, attach, recover or offset from the Property or property of the Estate that has been, or is to be, distributed under the Plan, and  (ii) the creation, perfection or enforcement of any Lien or encumbrance against the Property or any property of the Estate that has been, or is to be transferred or distributed under the Plan.  Except as otherwise provided in the Confirmation Order, entry of the Confirmation Order shall constitute an injunction against the commencement or continuation of any action, the employment of process, or any act, to collect, recover or offset, from the Debtor, from LIC or from the Property or any property of the estate, any claim, obligation or debt that was held by any person or entity as of the Effective Date except pursuant to the terms of the Plan.  Pursuant to 11 U.S.C. § 1141(d)(3), the Debtor herein shall not receive a discharge in connection with this liquidating Plan.

8.2    **Limitation of Liability**. Neither the Debtor, the Disbursing Agent nor any of its respective officers, attorneys, directors, or employees (acting in such capacity) nor any professional person employed by any of them shall have or incur any liability to any entity for any

action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, Confirmation or consummation of the Plan, except in the case of fraud, gross negligence, willful misconduct, malpractice, breach of fiduciary duty, criminal conduct, unauthorized use of confidential information that causes damages, or ultra vires acts. Nothing in the Plan or the Confirmation Order shall effect a release of any claim by the United States Government or any of its agencies or any state and local authority whatsoever, including, without limitation, any claim arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Debtor, the Disbursing Agent or any of their respective members, shareholders, officers, directors, employees, attorneys, advisors, agents, representatives and assigns, nor shall anything in the Plan enjoin the United States or any state or local authority from bringing any claim, suit, action or other proceedings against the such parties referred to herein for any liability whatever, including without limitation, any claim, suit or action arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state or local authority, nor shall anything in this Plan exculpate any party from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including liabilities arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against such parties referred to herein.   Nothing in this section 8.2 of the Plan shall limit the liability of any professionals involved herein for malpractice or under Rule 1.8(h)(1) of the New York State Rules of Professional Conduct.

    8.3  **Plan and Confirmation Order as Release**. Except as otherwise provided in the Plan, form and after the Effective Date, a copy of the Confirmation Order and the Plan shall

constitute and may be submitted as a complete defense to any claim or liability released pursuant to this Article 8 of the Plan.

## ARTICLE 9

### MISCELLANEOUS PROVISIONS

9.1 **Orders in Aid of Consummation.** Pursuant to sections 105, 1141, 1142 and 1143 of the Bankruptcy Code, the Bankruptcy Court may enter one or more Orders in aid of Confirmation directing the implementation of matters or actions required by the Plan.

9.2 **Compliance with Tax Requirements.** In connection with the Plan, the Debtor and the Disbursing Agent, shall comply with all withholding and reporting requirements imposed by federal, state and local taxing authorities and distributions under the Plan shall be subject to such withholding and reporting requirements; *providing, however,* that the transfer of any Cash, property or other interest hereunder shall not be subject to any stamp tax or any similar federal, state or local tax to the fullest extent provided under section 1146 of the Bankruptcy Code.

9.3 **Due Authorization by Creditors.** Each and every Creditor who accepts the distributions provided for under the Plan warrants that it is the lawful owner of such Claim and is authorized to accept the distributions provided for in the Plan and that there are no outstanding Liens, encumbrances, commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights released, conveyed or modified by the Plan, or obligations undertaken by such Creditor under the Plan.

9.4 **Amendments.** The Plan may be altered, amended or modified by the Debtor, in writing, signed by the Debtor, at any time before the substantial consummation of the Plan, as provided in sections 1101(a) and 1127 of the Bankruptcy Code and Bankruptcy Rule 3019. Any

substantive modification shall require notice and a hearing before the Bankruptcy Court for approval of the proposed modification of the Plan.

9.5 **Revocation.** The Debtor may revoke or withdraw the Plan at any time prior to entry of the Confirmation Order. If the Plan is revoked or withdrawn or if no Confirmation Order is entered, the Plan shall be null and void, and nothing contained in the Plan shall (i) constitute a waiver or release of any Claims by or against, or any Interest in, the Debtor; or (ii) prejudice in any manner the rights of the Debtor or any other party in any further proceedings involving the Debtor or its Estate.

9.6 **Request for Relief Under Section 1129(b).** If the Plan is accepted by one or more, but not all impaired Classes of Creditors, the Debtor may request confirmation under section 1129(b) of the Bankruptcy Code of any Class of Creditors, subject to any modification of the Plan made pursuant to section 1127 of the Bankruptcy Code, Bankruptcy Rule 3019.

9.7 **Filing of Additional Documents.** Except as otherwise provided in the Plan, on or before the Effective Date, the Debtor may file with the Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, and Debtor shall be responsible for the preparation and filing of any reports necessary until the entry of a Final Decree. Debtor shall also pay any fees due the U.S. Trustee's Office until entry of a Final Decree.

9.8 **Post-Confirmation Operating Reports and United States Trustee's Fees.** The Debtor shall be responsible for the preparation and filing of monthly operating reports until entry of a final decree, dismissal or conversion of this case, whichever is earlier. Quarterly fees

payable to the Office of the United States Trustee shall be paid by the Debtor until entry of a final decree, dismissal or conversion of this case, whichever is earlier.

9.9 **Section Headings.** The section headings contained in the Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of the Plan.

9.10 **Computation of Time.** In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

9.11 **Successors and Assigns.** The rights, benefits and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

9.12 **Notices.** All notices and other communications to be given or made hereunder shall be in writing and shall be deemed to have been given or made when mailed or as otherwise set forth herein:

(a) if to the Debtor at Shafferman & Feldman LLP, 137 Fifth Avenue, 9th Floor, New York, New York 10010, Attn: Joel Shafferman, Esq.;

(b) if to any Creditor or Interest holder at (i) the addresses set forth on the respective Proofs of Claim filed by such holders; (ii) the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related Proof of Claim; or (iii) the address reflected in the Schedules if no Proof of Claim is filed and the Disbursing Agent has not received a written notice of a change of address;

(c) if to any Entity that has filed a notice of appearance, at the addresses set forth on such notice of appearance.

9.13    **Governing Law.** Except to the extent that the Bankruptcy Code or Bankruptcy Rules or other Federal law are applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with the laws of the State of New York without giving effect to the principles of conflict of laws thereof.

9.14    **Other Actions.** Nothing contained herein shall prevent the Debtor, Interest Holders, or Creditors from taking such actions as may be reasonably necessary to consummate the Plan, although such actions may not specifically be provided for within the Plan.

9.15    **Severability.** In the event any provision of the Plan is determined to be unenforceable such determination shall in no way limit or affect the enforceability and operative effect of any or all other provisions of the Plan.

9.16    **Business Day.** In the event that the Plan requires an act to be performed on a day that is not a Business Day, such act shall be performed on the first Business Day thereafter.

## ARTICLE 10

### RETENTION OF JURISDICTION

10.1    **Retention of Jurisdiction.** Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, until the Case is closed, the Bankruptcy Court shall retain and have original, but not exclusive, jurisdiction to:

(a)    Insure that the Plan is consummated, and to enter any Order pursuant to section 1142(b) of the Bankruptcy Code, to compel the Debtor, and any other necessary party, to take such action and execute such documents to effectuate the Plan;

(b)    Consider any modification of the Plan proposed pursuant to section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019;

(c)     Allow, disallow, determine, liquidate, classify or establish the priority, secured or unsecured status of any Claim or Interest, including, without limitation, the resolution of any request for payment of any Administrative Expense, the resolution of any and all objections to the allowance or priority of Claims or Interests, and the resolution of any adversary proceeding;

(d)     Grant or deny any and all applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for any period ending on or before the Effective Date;

(e)     Resolve any motions pending on the Effective Date to assume, assume and assign or reject any Executory Contract or Unexpired Lease to which the Debtor is a party or with respect to which the Debtor may be liable and to hear, determine and if necessary, liquidate, any and all Claims arising therefrom;

(f)     Ensure that distributions to holders of Allowed Claims and Allowed Interests are accomplished pursuant to the provisions of this Plan;

(g)     Decide or otherwise resolve any and all applications, motions, adversary proceedings, contested or litigated matters, and any other matters or grant or deny any applications involving the Debtor that may be pending on the Effective Date;

(h)     Enter such Orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases and other agreements or documents created in connection with the Plan or Disclosure Statement or to enforce all orders, judgments, injunctions, and rulings entered in connection with the Case, including, but not limited to any Order necessary to enforce the provisions of article 7 of the Plan;

(i)     Resolve any and all controversies, suits or issues that may arise in connection with the consummation, interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

(j)     Modify the Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code, or to modify the Disclosure Statement or any contract, instrument, release or other agreement or document created in connection with the Plan or Disclosure Statement;

(k)     Remedy any defect or omission or reconcile any inconsistency in any Order, the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created in connection with the Plan, to the extent authorized herein or in the Bankruptcy Code;

(l)     Issue any injunctions, enter and implement other Orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation or enforcement of the Plan;

(m)     Enter and implement such Orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(n)     Determine any dispute arising under or related to the Plan, including, without limitation, any dispute concerning the scope or effect of any release or discharge provided for by the Plan or the Confirmation Order.

(o)     Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with the Plan or Disclosure Statement;

(p)     Enter an Order or Final Decree concluding the Case; and

(q)     Determine any cases involving the Debtor's retained causes of action under the Bankruptcy Code or analogous state law causes of action.

10.2     **Post-Closing Jurisdiction.**  Notwithstanding the entry of a final decree or an Order closing the Case, the Bankruptcy Court shall retain jurisdiction to reopen the Case for the purpose of enforcing, by injunction or otherwise, the terms of the Plan, the Confirmation Order and any final decree, including, without limitation, the enforcement of any rights of the Debtor.

## ARTICLE 11

### CONDITION TO THE EFFECTIVE DATE

11.1     **Condition Precedent to Effectiveness.** The Plan shall not become effective unless and until it has been confirmed and the following conditions have been satisfied in full:

(a).     The Confirmation Order shall have been entered in this case and no stay or injunction shall be in effect precluding the consummation of the transactions contemplated by this Plan and the Confirmation Order shall not have been modified or vacated on appeal.

## ARTICLE 12

### CLOSING THE CASE

12.1     **Substantial Consummation.**  Until the occurrence of the Effective Date and Substantial Consummation of the Plan and except as provided in Section 10.1 of the Plan, the Debtor, its property and its Creditors shall be subject to further Orders of the Bankruptcy Court.

12.2 **Closing the Case.** Upon the Substantial Consummation of the Plan, the Debtor shall expeditiously move for the entry of a final decree closing the Case and such other relief as may be just and appropriate.

**DATED:** December 15, 2021

 /S/ David Goldwasser
David Goldwasser, the Manager of
Sawmill Road Partners, LLC,
Member of 25-16 37th Owners, LLC

**DATED:** New York, New York
December 15, 2021

SHAFFERMAN & FELDMAN LLP
Counsel for the Debtor
137 Fifth Avenue, 9th Floor
New York, New York 10017
(212) 509-1802

By  /S/ Joel M. Shafferman
Joel M. Shafferman