UNITED STATES BANKRUPTCY COURT      **Hearing Date and Time**
EASTERN DISTRICT OF NEW YORK      **January 19, 2022 @ 10:30 a.m.**
--------------------------------------------------------x

In re:                        Chapter 11

 25-16 37th AVE OWNERS, LLC,        Case No:  21-42662-jmm

                  Debtor.

--------------------------------------------------------x

### NOTICE OF MOTION OF APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING AND APPROVING AN AUCTION SALE FOR THE REAL PROPERTIES KNOWN AS AND LOCATED AT 25-12 AND 25-16 37TH AVENUE, LONG ISLAND CITY, NEW YORK 11101, FREE AND CLEAR OF ALL MONETARY LIENS, CLAIMS AND ENCUMBRANCES, WITH SUCH MONETARY LIENS, CLAIMS AND ENCUMBRANCES TO ATTACH TO THE PROCEEDS OF SALE; AND APPROVING THE <u>BIDDING PROCEDURES FOR THE PROPERTIES</u>

TO THE HONORABLE JIL MAZER-MARINO,
UNITED STATES BANKRUPTCY JUDGE:

          **PLEASE TAKE NOTICE** that on December 17, 2021, 25-16 37th Ave Owners, LLC, the debtor and debtor in possession (the "Debtor") and proponent of the Liquidating Plan of Reorganization, dated December 15, 2021, filed an application seeking the entry of an order, in accordance with §§ 105, and 363 and 365 of title 11, United States Code (the "Bankruptcy Code"), Federal Rules of Bankruptcy Procedure 2002, 6004, and 6006, Local Rule 6004-1: (a) authorizing and approving the terms and conditions for the sale for the real  properties known as and located at 25-12 and 25-16 37th Avenue, Long Island City, New York 11101 (the "Properties") free and clear of all momentary liens, claims and encumbrances, with such monetary liens, claims and encumbrances to attach to the proceeds of sale; (b) approving the bidding procedures for the sale of the Properties; and (c) granting the Debtor such other and further relief as this Court deems just and proper (the "Application"); and that the Debtor will

move The Honorable Jil Mazer-Marino, United States Bankruptcy Judge, on **January 19, 2022 at 10:30 a.m., or as soon thereafter as counsel may be heard (the "Hearing Date"), telephonically at Dial in Number 888-273-3658; Access Code 2872314** for approval of the relief sought in the Application.

**PLEASE TAKE FURTHER NOTICE** that any objections to the Application must be in writing and shall state with particularity the grounds therefor, and, pursuant to General Order No. M-182 re: Electronic Case Filing Procedures (as amended from time to time), objections to the Applications (formatted with Adobe Acrobat, rider 3.0) shall be filed with the Clerk of the Bankruptcy Court, at http:// www.nyeb.uscourts.gov (with a copy to Chambers), and served upon and received by counsel for the Debtor, Shafferman & Feldman LLP, 137 Fifth Avenue, 9th Floor, New York, New York 10010, Attn: Joel M. Shafferman, Esq.; and the United States Trustee's Office, 201 Varick Street, Suite 1006, New York, New York 10014, Attn: Reema Lateef, Esq., no later than 5:00 P.M. seven (7) days prior to the Hearing Date.

DATED:     New York, New York
               December 17, 2021

SHAFFERMAN & FELDMAN LLP
Counsel for the Debtor
137 Fifth Avenue, 9th Floor
New York, New York 10010
(212) 509-1802
By: Joel M. Shafferman_____
Joel M. Shafferman, Esq.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
In re:

25-16 37th AVE OWNERS, LLC,

                              Debtor.
---------------------------------------------------------x

<u>Hearing Date and Time</u>
**January 19, 2022 @ 10:30 a.m.**

Chapter 11

Case No:  21-42662-jmm

**APPLICATION FOR ENTRY OF AN ORDER
AUTHORIZING AND APPROVING AN AUCTION SALE
FOR THE REAL PROPERTIES KNOWN AS AND
LOCATED AT 25-12 AND 25-16 37TH AVENUE, LONG
ISLAND CITY, NEW YORK 11101, FREE AND CLEAR OF
ALL MONETARY LIENS, CLAIMS AND
ENCUMBRANCES, WITH SUCH MONETARY LIENS,
CLAIMS AND ENCUMBRANCES TO ATTACH TO THE
PROCEEDS OF SALE; AND APPROVING THE BIDDING
<u>PROCEDURES FOR THE PROPERTIES</u>**

**TO:    THE HONORABLE JIL MAZER-MARINO,
        UNITED STATES BANKRUPTCY JUDGE:**

25-16 37th Ave Owners, LLC,, the debtor and debtor in possession (the "Debtor") and proponent of the Liquidating Plan of Reorganization, dated December 15, 2021, as and for its application seeking the entry of an order, in accordance with §§ 105, 363, and 365 of title 11, United States Code (the "Bankruptcy Code"), Federal Rules of Bankruptcy Procedure 2002, 6004, and 6006, Local Rule 6004-1: (a) authorizing and approving the terms and conditions for the sale of the real properties known as and located at  25-12 and 25-16 37th Avenue, Long Island City, New York 11101 (the "Properties"); with the Properties being sold free and clear of all momentary liens, claims and encumbrances, with such monetary liens, claims and encumbrances to attach to the proceeds of sale; (b) approving the bidding procedures for the sale of the Properties; and granting the Debtor such further relief as this Court deems just and proper, respectfully represents as follows:

3

## JURISDICTION AND STATUTORY PREDICATE

1.      This Court has jurisdiction to hear this motion under 28 U.S.C. §§157(a) and 1334, and the Order of Reference of the United Stated District Court for the Eastern District of New York.   This is a core proceeding pursuant to 28 U.S.C. §157(b). The statutory predicate for the relief sought herein is 11 U.S.C. §§105, 363(b) and (f), and 365(a), (b), and (f), and Federal Rules of Bankruptcy Procedure 2002, 6004, and 6006.

2.      The statutory predicates for the relief requested herein are Bankruptcy Code §§105, 363, and 365, Bankruptcy Rules 2002 and 6004, and Local Rule 6004-2.

## FACTUAL BACKGROUND

3.      On October 19, 2021 (the "Filing Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United State Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of New York (the "Court").

4.      The Debtor has continued in possession of its properties as a debtor in possession under sections 1107 and 1108 of the Bankruptcy Code. No trustee, examiner or official creditors' committee has been appointed in this chapter 11 case.

5.      The Debtor is a New York Limited Liability Company engaged in the business of owing and developing "The SMYTH", a 53,954 GSF 7-Story mixed-use condominium project located at 25-16 37th Avenue, Long Island City, New York (the "Properties"). The Properties are inclusive of all intellectual property rights relating thereto, including but not limited to plans, specifications, permits and approvals. The proposed development will contain a 29-car parking garage, 15,371 NSF of retail space, and 28,998 NSF of residential space across 38 condominium units.

6.      On December 15, 2021, the Debtor filed the Plan and Disclosure Statement in Connection with Liquidating Plan of Reorganization (the "Disclosure Statement") with this Court.  As the means of implementation of the Plan, the Debtor, through its proposed broker, Rosewood Realty Group ("Rosewood"), will market and sell the Properties, through a public auction pursuant to the Bid Procedures.

## THE RELIEF SOUGHT

7.      By this Motion, the Debtor seeks entry of an order, substantially in the form annexed hereto as **Exhibit A**, (a) approving certain bidding procedures for, and notice of the Sale and the Terms and Conditions of Sale ("Bidding Procedures") (a copy of the proposed Bidding Procedures is annexed hereto as Exhibit A to Proposed Order); (b) establishing a procedure for conducting the Sale process; (c) approving the form, time and scope of notice of the Sale, and (d) granting related relief, including entry of an order authorizing and approving the Sale of the Properties to the bidder(s) making the highest or best offer, free and clear of Liens, with such Liens to attach to the proceeds of the Sale in the same amount, priority, and validity existing as of the respective Petition Date.

**The Proposed Bidding Procedures**

8.      The Debtor and its senior lender, LIC Senior Debt LLC, or its designee ("LIC" or the "Stalking Horse Bidder"), have entered into a Purchase and Sale Agreement (the "PSA"), a copy of which is attached hereto as **Exhibit "B"**, whereby the Stalking Horse Bidder has agreed to purchase the Properties for: (i)  a credit bid, in the amount of $13,000,000.00; (ii) $100,000 to be used to pay holders of allowed unsecured claims pursuant to the Debtor's Liquidating Plan of Reorganization (the "Plan"); and (ii) LIC's commitment to pay all allowed holders

administrative, priority claims, and Bankruptcy Fees pursuant to the Plan.**1** The sale of the Properties shall be subject to higher and better offers at the Auction.

9.    The proposed Bidding Procedures provide, in part, for: (a) an initial overbid in the amount of $14,200,000.00, which is inclusive of a payment of a breakup fee, in the amount of $275,000, to the Stalking Horse Bidder in the event that it is not the successful bidder; (b) a deposit, in the amount of 10% of the amount offered; and (c) an increase of the deposit by the successful bidder within 2 business days after the auction to bring the total deposit to 10% of the highest offered purchase price.

10.    The overbid has been calculated based the following:

| | |
|---|---|
| $13,000,000 | Rounded up amount of LIC's Secured Claim as of the Petition Date |
| $275,000 | Breakup Fee to the Stalking Horse |
| $110,000 | Estimated Bankruptcy Fees Owed to the United States Trustee's Office |
| $100,000 | Debtor's Professionals exclusive of Rosewood |
| $100,000 | Payment to Unsecured Creditors Fund |
| $100,000 | Property taxes and other expenses either payable directly to taxing authorities or reimbursed to LIC as a superiority adequate protection lien should it be advanced by LIC under the pending Proposed Stipulated Order Regarding Secured Claim of LIC Senior Debt LLC relating to use of Cash Collateral (the "Cash Collateral Order") |
| $13,685,000 | Total Amount, Not Including Broker's Commission |
| $513,187.50 | Rosewood's 3.75% commission (3.75% x $13,685,000=$513,187.50 |
| $14,198,187.50 | Initial Over Bid Amount, Including Broker's Commission of 3.75% |

---

1 The amounts payable by the Stalking Horse Bidder include payment of closing costs for the sale of the Properties and a reduced broker commission of $80,000 to Rosewood. Should the Properties be sold to a higher and better bidder, Rosewood's commission is fixed at 3.75%.

| | |
|---|---|
| $14,200,000.00 | Rounded up Initial Over Amount |

11.      The Stalking Horse secured claim, as of the Petition Date, was approximately $13,000,000, excluding attorney's fees, expenses, disbursements or other charges that may be due and owing. To the extent a higher and better bid is received at the Auction (defined below), the Stalking Horse reserves the right to increase its credit bid to include up to any post-petition default interest and expenses pursuant to 11 U.S.C. §506(b).

12.      To the extent LIC is not the prevailing bidder the Auction, any surplus funds after distribution to priority and administrative creditors that exceeds the $100,000 reserved for unsecured creditors, shall be secured by LIC's claim and paid to LIC to the extent of its claim post-petition interest and expenses pursuant to 11 U.S.C. §506(b)

13.      The successful purchaser must close title to the Properties on a date that is no later than thirty (30) calendar days after the entry of an order (the "Approval Order") approving the sale of the Properties to the Successful Bidder by the Bankruptcy Court (the "Closing Date") although such date may be extended solely by the Debtor, in its discretion. No transaction shall be deemed final until approved by the Court.

14.      The Court and all interested parties are respectfully referred to the Bidding Procedures for its more precise terms.

**Exemption of Sale of the Properties from Transfer Taxes**

15.      Pursuant to section 1146 of the Bankruptcy Code §1146, the "transfer... or the making or delivery of an instrument of transfer under a plan confirmed under section 1129 of this

title, may not be taxed under any law imposing a stamp tax or similar tax." See 11 U.S.C. §1146(c).

16.    The sale of the Properties is necessary and integral to the implementation of the Plan. Consequently, the Debtor respectfully submits that the sale of the Properties and distribution of the proceeds through the Plan falls within the scope of the exemption provided for under Bankruptcy Code §1146(c).

17.    In the event LIC prevails at the Auction, it may elect to retain its security interest in the Properties in the face amount of its existing mortgage of $17,580,000 so that it may be utilized to obtain construction financing to complete the SMYTH without additional payment of mortgage recording tax. For more information about the LIC Secured Claim, the Debtor respectively refers the Court to the Cash Collateral Order.

**Determination of Highest or Best Offer**

18.    The successful buyer for the Properties will be the party or parties who tender the highest or best bid, which presents the best opportunity to maximize the value of the Properties for the benefit of the Debtor's estate and their creditors. Any party that is interested in bidding on the Properties must sign a contract substantially similar to the form of the Contract to be provided by the Debtor's attorney, and provide the undersigned  Debtor's attorney with a minimum deposit of 10% of the  price offered (the "Deposit").

19.    The Deposit must be in the form of a bank check, or wire transfer, made payable to "Shafferman & Feldman LLP Attorney Escrow IOLA Account" and be delivered to the Auctioneer (defined below) in accordance with the deadlines set forth in the Bidding Procedures.

20.    Subject to approval of this motion Auction shall be conducted telephonically or by videoconference on February    , 2022 at 11:00 am (the "Sale Date"), or such other adjourned

date posted on the website maintained by Rosewood Realty Group, the Debtor's broker ("Rosewood", "Broker" or "Auctioneer"). The Debtor reserves the right to change the location, date and/or time of the Auction Sale and the Properties shall be offered for inspection by appointment at reasonable times, requested by an interested party to the Auctioneer, which will make such arrangements. The auction will be governed by the Bidding Procedures approved by the Court. The Debtor reserves the right to change the date, time, and location of the auction after it has been scheduled, and provided that appropriate notice is given to creditors and interested parties.

21.     The Debtor's obligation to pay a commission to Rosewood as described above shall be the subject of a separate application to be heard by the Court upon appropriate notice.

## STATUTORY PREDICATE FOR RELIEF REQUESTED

### Authority to Sell the Properties

22.     Pursuant to Bankruptcy Rule 6004(f)(1), sales of a debtor's property outside the ordinary business may be by private sale or public auction. The Debtor believes that it is in the best interests of its estate to sell the Properties at a public auction, as set forth in the Bidding Procedures, in order to ensure that it receive the highest and best offer for the Properties.

23.     Section 363(b) of the Bankruptcy Code provides that a debtor "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b). A debtor's determination to sell or use assets outside the ordinary course of business under section 363, and the procedures employed by a debtor to effect such a sale, are entitled to substantial deference under the business judgment rule. "The business judgment rule's presumption shields corporate decision-makers and their decisions from judicial second-guessing when the following elements are present: (1) a business decision, (2)

disinterestedness, (3) due care, (4) good faith, and (5) according to some courts and commentators, no abuse of discretion or waste of corporate assets." <u>In re Integrated Resources, Inc</u>*,* 147 B.R. 650, 656 (S.D.N.Y. 1992) (internal quotation marks omitted); *see also* <u>In re Boston Generating, LLC</u>*,* 440 B.R. 302, 330 (Bankr. S.D.N.Y. 2010); <u>Licensing By Paolo. Inc. v. Sinatra (In re Gucci)</u>, 126 F.3d 380, 387 (2d Cir. 1997).

24.    The Court of Appeals for the Second Circuit first enunciated this standard by stating: "[t]he rule we adopt requires that a judge determining a §363(b) application expressly find from the evidence presented before him at the hearing a good business reason to grant such application." <u>In re Lionel Corp.</u>, 722 F.2d at 1070-71.

> the proportionate value of the asset to the estate as a whole, the amount of elapsed time since the filing, the likelihood that a plan of reorganization will be proposed and confirmed in the near future, the effect of the proposed disposition on future plans of reorganization, the proceeds to be obtained from the disposition vis-à-vis any appraisals of the property, which of the alternatives of use, sale or lease the proposal envisions, and most importantly perhaps, whether the asset is increasing or decreasing in value.

<u>Lionel</u>, 722 F.2d at 1071.

25.    The Debtor seeks approval to sell the Properties, free and clear of any and all liens, claims or encumbrances in accordance with section 363(f) of the Bankruptcy Code.  A trustee may sell property to section 363(b) and 363(f) "free and clear of any interest in such property of an entity other than the estate" if one of the following conditions are satisfied:

> •      applicable non-bankruptcy law permits sale of such property free and clear of such interest;
> •      such entity consents;
> •      such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
> •      such interest is in bona fide dispute; or
> •      such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. §363(f).

26.     The Debtor believes that the sale of the Properties will pay the allowed claims of secured claims, in full or that LIC, the Debtor's secured creditor, consents to the sale, as it is the Stalking Horse Bidder.  Consequently, the Debtor proposes that the Properties be sold to all liens be transferred to and attach to the proceeds of the sale, subject to the rights, claims, defenses, and objections, if any, and that Purchaser be deemed a "good faith purchaser" under section 363(m) of the Bankruptcy Code

27.     The Debtor is also seeking to sell the Properties, "As Is" "Where Is" without any representations or warranties of any kind.

28.     Subsequent to the Sale, the Debtor intends to seek confirmation of the successful bidder(s) in the following manner:

(i)     within 72 hours after the close of the auction, the Debtor will file a declaration (the "Sale Declaration") in further support of the Sale that will include the actual marketing efforts undertaken leading up to the Sale and a detailed report of the Sale, including, but not limited to the:

> (a)     number of registered, qualified bidders at the auction and how many of those bidders actually submit one or more bids during the auction;
>
> (b)     highest or best offer(s)  received  at the auction (the "High Bid") along with the identity of the bidder(s); and
>
> (c)     total amount of liens potentially asserted against the Properties as compared against the High Bid for purposes of supporting the Sale under Bankruptcy Code § 363(f);

(ii)    substantially contemporaneous with the filing of the Sale Declaration, the

Debtor shall present a proposed sale order on seven (7) additional days' notice by

first class mail (the "Sale Order Presentment").

29.    Furthermore, as part of the Sale Declaration, the Debtor anticipates supplementing

this Motion with evidence supporting a finding that the party making the highest or best offer at

such public sale, acted in good faith and that the protections of a good faith purchaser under

section 363(m) of the Bankruptcy Code are appropriate. In connection with the Sale Order

Presentment, the Auctioneer's Report of Sale will also be filed.

**The Proposed Breakup Fee Is Appropriate Under**
**the Circumstances and Should Be Approved.**

30.    To compensate the Stalking Horse Bidder for serving as a "stalking horse" whose

bid will be subject to higher or better offers, the Debtor seeks authority to provide the Stalking

Horse Bidder with the Bid Protections in the event it is not the Successful Bidder. Subject to 11

U.S.C. § 363(f), the Stalking Horse Bidder shall be entitled to a breakup fee, in the amount of

$275,000 (the "Breakup Fee"), payable to the Stalking Horse Bidder from the proceeds of the

Auction Sale. The Stalking Horse Bidder will be entitled to the Breakup Fee only upon the

consummation of an alternative transaction wherein the Stalking Horse Bidder is NOT the

Successful Bidder, and payable solely from the proceeds of such transaction.

31.    Breakup fees encourage a potential purchaser to invest the requisite time, money

and effort to negotiate with a debtor and perform the necessary due diligence attendant to the

acquisition of a debtor's assets, despite the inherent risks and uncertainties of the chapter 11

process. See, e.g., In re Comdisco, Inc., Case No. 01-24795 (Bankr. N.D. Ill. Aug. 9, 2002)

(approving a termination fee as, inter alia, an actual and necessary cost and expense of

preserving the debtor's estate, of substantial benefit to the debtor's estate and a necessary inducement for, and a condition to, the proposed purchaser's entry into the purchase agreement); Integrated Resources, 147 B.R. 650, 660 (Bankr. S.D.N.Y. 1992) (noting that fees may be legitimately necessary to convince a "white knight" to offer an initial bid by providing some form of compensation for the expenses such bidder incurs and the risks such bidder faces by having its offer held open, subject to higher and better offers); In re Marrose Corp., 1992 WL 33848, at *5 (Bankr. S.D.N.Y. 1992) (stating that "agreements to provide reimbursement of fees and expenses are meant to compensate the potential acquirer who serves as a catalyst or 'stalking horse' which attracts more favorable offers").

32.     The Debtor believes that Breakup Fee is reasonable, given the significant benefits to the estate and this Chapter 11 Case of having a definitive PSA in place and the risk to the Stalking Horse Bidder that a third-party offer ultimately may be accepted by the Debtor, and (ii) the Bid Protections are necessary and, in fact, critical, to preserve and enhance the value of the Debtor's estate.

**Assignment of Contracts and Leases**

33.     Bankruptcy Code §365 states in relevant part that"... the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. §365(a). The ability to assume or reject an unexpired contract or lease allows a debtor to examine its unexpired contracts and leases and decide which ones it would be beneficial to adhere to and which ones it would be beneficial to reject. See, e.g., Orion Pictures Corporation v. Showtime Networks, Inc. (In re Orion Pictures Corp.), 4 F.3d 1095, 1098 (2d. Cir. 1993). This decision involves a debtor's "business judgment," which, in essence, determines whether "[assuming] the contract would be a good business decision or a bad one." Id. at 1099.

34.    The Debtor requests that in conjunction with the Sale, it be permitted to assign to the successful purchaser(s) any existing executory contracts and unexpired leases relating to the Properties that such successful purchaser elects to assume. The Debtor will endeavor to file and obtain an order rejecting any existing executory contract or unexpired lease that it chooses prior to the Auction Sale (the "Rejection Contracts and Leases").

35.    Accordingly, the Debtor, in its business judgment, seeks authority to assume and assign any and all executory contracts and unexpired leases relating to the Properties to the successful purchaser at the Auction that such successful purchaser elects to assume. The Debtor advises the Court it is still collecting its books and records from the prior member of the Debtor and that it intends to amend its petitions and schedules shortly. One of those amendments include that a certain License Agreement, dated as of September 2016 , (the "Rivera License Agreement"), and amended on or before November 21, 2018 pursuant to a certain Amendment One to License Agreement (the "Rivera License Amendment") by and between Salvador Rivera and the Debtor, as well as the agreements referenced below are unexpired executory contracts.[2] The Rivera License Agreement provided for certain underpinning work to be performed on a neighboring property located at 37-18 27th Street, Queens, NY 11101 (the "Rivera Property"). Upon information and belief, the Debtor's contractor Penta Restoration Corporation and its subcontractor began performing construction work and caused the Neighboring Property to partially destabilize. The Debtor entered into the Rivera License Agreement and a related Agreement, dated and effective as of November 21, 2018 (the "Relocation Agreement) with Rivera, providing for emergency grouting work to be performed and for the owner occupant and his family to be relocated to another apartment during such work. The Debtor entered into two

---

2 The Debtor has scheduled the relevant parties referenced in this section previously as unsecured creditors.

month to month leases with LNN Realty LLC, dated November 21, 2018 for the ground floor and second floor apartments located at 36-42 Crescent Street for the occupants of the Rivera Property to reside until stabilization work was completed and the Rivera Property made inhabitable (together, the "LNN Leases")

36.     Upon information and belief, all stabilization work was completed but it is unclear that all obligations under such agreements have been discharged. Multiple proceedings referenced in the Debtor's Statement of Financial Affairs are pending in the New York State Supreme Court, County of Queens, and the Civil Court of the City of New York, County of Queens, relating to these matters. There also exist pending proceedings between, *inter alia* the Debtor and its neighbor AGA Crescent for access and its other neighbor Lupo Realty Co. for neighboring property damage. To the extent there are unexpired executory contracts and leases associated with these neighbors, it is anticipated that the Stalking Horse or any other successful bidder will reject them.

37.     Based upon the foregoing, the Debtor submit that the Sale of the Properties, as outlined herein, to the person or entity making the highest or best offer for the Properties, is and will be an exercise of sound business judgment, is in the best interests of the Debtor's estates, and its creditors, and should be approved in all respects.

**NOTICE PROCEDURES**

38.     In addition to the Auctioneer's marketing and advertising efforts, the Debtor is providing additional, separate service of this Motion and accompanying documents.  The Debtor has served a Notice of Hearing, this Motion, and all Exhibits attached hereto, upon: (i) the United States Trustee; (ii) all creditors listed on the Debtor's bankruptcy petitions or that have filed proofs of claim in the Debtor's case; (iii) all parties having requested notices in the Debtor's

case; and (iv) all appropriate taxing authorities. The Debtor respectfully represents that service in the aforementioned manner is sufficient under these circumstances to notice the Sale and Bidding Procedures.

39.    No previous application for the relief requested in this Motion has been made to this or any other Court.

**WHEREFORE**, the Debtor respectfully request that this Court enter: (i) an order, substantially in the form annexed hereto as **Exhibit A**, (a) approving the Bidding Procedures; (b) establishing a procedure for conducting the Sale process; (c) approving the form, time and scope of notice of the Sale, and (d) granting related relief; and (ii) an order authorizing and approving the Sale of the Properties to the bidder(s) making the highest or best offer, free and clear of Liens, with such Liens to attach to the proceeds of the Sale in the same amount, priority, and validity existing as of the Petition Date, along with such other and further relief as this Court finds just and proper under the circumstances.

DATED:    New York, New York
          December 17, 2021

SHAFFERMAN & FELDMAN LLP
Counsel for the Debtor
137 Fifth Avenue, 9th Floor
New York, New York 10010
(212) 509-1802
By: Joel M. Shafferman_____
   Joel M. Shafferman, Esq.

# EXHIBIT "A" TO MOTION

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
In re:                                          Chapter 11

25-16 37th AVE OWNERS, LLC,                      Case No:  21-42662-jmm

                              Debtor.
--------------------------------------------------------x

**ORDER AUTHORIZING AND APPROVING AN AUCTION
SALE FOR THE REAL PROPERTIES KNOWN AS AND
LOCATED AT 25-12 AND 25-16 37TH AVENUE, LONG
ISLAND CITY, NEW YORK 11101, FREE AND CLEAR OF
ALL MONETARY LIENS, CLAIMS AND
ENCUMBRANCES, WITH SUCH MONETARY LIENS,
CLAIMS AND ENCUMBRANCES TO ATTACH TO THE
PROCEEDS OF SALE; AND APPROVING THE BIDDING
PROCEDURES FOR THE PROPERTIES**

**UPON** the motion (the "Motion") of 25-16 37th Ave. Owners, LLC, the debtor and

debtor in possession (the "Debtor") and proponent of the Liquidating Plan of Reorganization,

dated December  , 2021 (the "Plan"), seeking the entry of an order, in accordance with §§ 105,

and 363 and 365 of title 11, United States Code (the "Bankruptcy Code"), Federal Rules of

Bankruptcy Procedure 2002, 6004, and 6006, Local Rule 6004-1: (a) authorizing and approving

the terms and conditions for the sale ("Sale") for the real  properties known as and located at 25-

12 and 25-16 37th Avenue, Long Island City, New York 11101 (the "Properties") free and clear

of all monetary liens, claims and encumbrances (collectively, the "Liens"), with such Liens to

attach to the proceeds of the Sale to the extent, with the validity and in the same priority that

existed prior to the Sale; (b) approving the bidding procedures for the sale of the Properties; and

(c) granting the Debtor such other and further relief as this Court deems just and proper (the

"Motion"); and after due deliberation and consideration of all the facts and circumstances herein; and upon the certificate of service of the Motion on file with the Court (ECF Doc. No.     ); and no objections to the Motion having been interposed; and a hearing having been held on December   , 2021 (the "Hearing") and the Court having determined that the relief sought in the Motion is in the best interest of the Debtor's estate and its creditors; and adequate notice having been provided and no other or additional notice being necessary or required; it is hereby

**ORDERED**, that the Motion be and hereby is granted to the extent provided for herein, and any other relief sought in the Motion not granted by this Order shall be considered at the hearing scheduled to approve the results of the Auction to be held by this Court on February, 2022 at    m. (the "Sale Hearing") telephonically at Dial in Number 888-273-3658; Access Code 2872314 before Hon. Jil Mazer-Marino, United States Bankruptcy Judge, Eastern District of New York (the "Sale Hearing"); and it is further

**ORDERED**, that notice of the Motion given by the Debtor as described in the Motion and the related certificate of service is deemed adequate under the circumstances; and it is further

**ORDERED**, that the Terms and Conditions of Sale, annexed to this Order as **Exhibit "A",** are approved in all respects and the Debtor is authorized under Bankruptcy Code section 363 to sell all of the Debtor's right, title, and interest in and to the Properties at a public auction and pursuant to the relevant terms of the Plan, free and clear of all Liens, with such Liens attaching to the sale proceeds to the extent, with the validity and in the priority that existed prior to the Sale and as previously determined by the Court, and such Liens remaining in place pending closing of the Sale of each of the Properties; and it is further

**ORDERED**, that the Auction shall be conducted telephonically or by videoconference on **February    , 2022 at    m** (the "Sale Date"), or such other adjourned date posted on the website maintained by Rosewood Realty Group, the Debtor's broker, and that the Properties shall be offered for inspection by appointment at reasonable times, requested by the interested party to the Debtor's auctioneer, which will make such arrangements; and it is further

**ORDERED**, that the Notice of Sale in substantially the form annexed hereto as **"Exhibit B"** is approved in all respects.  Within three (3) business days after entry of this Order, the Debtor shall serve a copy of the Notice of Sale by first class mail or e-mail, upon the following notice parties (each a "Notice Party" and collectively, the "Notice Parties"): (i) the Office of the United States Trustee; (ii) counsel to the Debtor's secured creditor; (iii) the Debtor's sole member; (iv) each of the Debtor's creditors; (v) all other parties having requested notices in the Debtor's bankruptcy case; and it is further

**ORDERED**, that within 48 hours after the conclusion of the Auction, or the execution of a contract of sale with one or more purchasers for the Properties, the Debtor shall file a Sale Declaration with the Court regarding the results of the Auction; and it is further

**ORDERED**, that objections, if any, to that part of the relief sought in the Motion not otherwise approved by this Order, including the Sale of the Properties free and clear of liens, shall be (i) filed with the Bankruptcy Court by February    , 2022, at 4:00 p.m. electronically by registered users of the Court's electronic case filing system and, by all other parties in interest, mailed to the Clerk of the United States Bankruptcy Court for the Eastern District of New York, 271-C Cadman Plaza East, Suite 1595, Brooklyn, New York 11201-1800 and (ii) upon: (a) attorneys for the Debtor, Shafferman & Feldman LLP, 137 Fifth Avenue, 9th Floor, New York, New York 10010, Attn: Joel Shafferman, Esq.; and (b) the United States Trustee, U.S. Federal

19

Office Building, 201 Varick Street, Suite 1006, New York, New York 10014, Attn: Reema Lateef, Esq.; and it is further

**ORDERED**, that within three (3) business days of the entry of this Order, the Debtor shall serve a copy of this Order by first class mail or e-mail, upon (i) the United States Trustee; (ii) all creditors listed on the Debtor's bankruptcy petition and/or that have filed proofs of claim in the Debtor's case; (iii) all parties having requested notices in the Debtor's case; and (iv) all appropriate taxing authorities, and file an certificate or affidavit evidencing service no later than the filing of the Sale Declaration

# EXHIBIT "A" TO PROPOSED ORDER

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
In re:                                          Chapter 11

25-16 37th AVE OWNERS, LLC,                      Case No:  21-42662-jmm

                              Debtor.
--------------------------------------------------------x

## BIDDING AND AUCTION PROCEDURES

These Terms and Conditions of Sale are promulgated in connection with the sale (the "Sale") of the real property and the improvements thereon, located at and commonly known as at 25-12 and 25-16 37th Avenue, Long Island City, New York 11101 (the "Properties"). The seller of the Properties is 25-16 37th Ave Owners, LLC (the "Debtor'). The sale of the Properties shall be conducted pursuant to sections 363(f), 1123(a)(5)(D), and 1141(c) of the Bankruptcy Code and the Debtor's Liquidating Plan of Reorganization, dated December   , 2021 (the "Plan").

A.        Time and Place of Auction.  The sale of the Properties shall be pursuant to an auction (the "Auction") held on February   , 2021 commencing at 11:00 a.m., by telephone or video conference in accordance with procedures to be implemented in the sole discretion of the Debtor in consultation with its professionals, with notice of such procedures given to all interested parties prior to the Auction. The Debtor has retained Rosewood Realty Group as real estate broker (the "Broker" or "Rosewood") to market the Properties pursuant to order of the Bankruptcy Court entered on December   , 2021 [ECF Doc #   ].

B.        Sale Free and Clear of Liens. The sale of the Properties shall be free and clear of all liens, claims, encumbrances, equities and interests, of any nature or kind, other than permitted encumbrances consented to by the prevailing purchaser. All liens and encumbrances upon the Properties shall remain in effect until the closing of the sale, and at closing shall be transferred to and attach to the net proceeds of the sale in the same priority that existed immediately  before  the  closing  and disbursed pursuant to the provisions of the   Plan.

C.        Stalking Horse Bidder. The Debtor and LIC, or its designee (the "Stalking Horse Bidder"), have entered into an Purchase Sale Agreement (the "PSA"), whereby the Stalking Horse Bidder has agreed to purchase the Properties for: (i)  LIC's credit bid, in the amount of $13,000,000; (ii) $100,000 to be used to pay holders of allowed unsecured claims pursuant to the Debtor's Liquidating Plan of Reorganization (the  "Plan"); (ii) LIC's commitment to pay all allowed administrative, priority claims, and Bankruptcy Fees pursuant to the Plan, in the approximate amount of $210,000.  The Stalking Horse Bidder must provide

21

the sum of $13,250,000 in immediately available funds or credit bid at the closing of the sale of the Properties. The sale of the Properties shall be subject to higher and better offers at the Auction. Subject to 11 U.S.C. § 363(f), the Stalking Horse Bidder shall be entitled to a breakup fee (the "Breakup Fee"), in the amount of $275,000, payable to the Stalking Horse Bidder from the proceeds of the Sale. The Stalking Horse Bidder will be entitled to the Breakup Fee only upon the consummation of an alternative transaction wherein the Stalking Horse Bidder is NOT the Successful Bidder, and payable solely from the proceeds of such transaction. The opening bid for the Properties at the Auction (the "Initial Bid") must be for at least $14,225,000 as set forth on the chart below:

| | |
|---|---|
| $13,000,000 | Rounded up amount of LIC's Secured Claim as of the Petition Date |
| $275,000 | Breakup Fee to the Stalking Horse |
| $110,000 | Estimated Bankruptcy Fees Owed to the United States Trustee's Office |
| $100,000 | Debtor's Professionals exclusive of Rosewood |
| $100,000 | Payment to Unsecured Creditors Fund |
| $100,000 | Property taxes and other expenses either payable directly to taxing authorities or reimbursed to LIC as a superiority adequate protection lien should it be advanced by LIC under the pending Proposed Stipulated Order Regarding Secured Claim of LIC Senior Debt LLC relating to use of Cash Collateral (the "Cash Collateral Order") |
| $13,685,000 | Total Amount Not Including Broker's Commission |
| $513,187.50 | Rosewood's 3.75% commission (3.75% x $13,685,000=$513,187.50 |
| $14,198,187.50 | Initial Over Bid Amount Including Broker's Commission of 3.75% |
| $14,200,000.00 | Rounded up Initial Over Amount |

D.      <u>Broker's Commission</u>. Rosewood will be paid a commission equal to three point seven five percent (3.75%) of the gross purchase price of the Properties, except in the event that the successful purchaser is the Stalking Horse Bidder; then the Broker's commission shall be fixed at $80,000, which will be paid directly to Rosewood at closing without further order of the Court, by the successful purchaser, separate from and in addition to the consideration (or gross purchase price) that the successful purchaser pays for the Property, upon the occurrence the following event:

        a.     Debtor enters into an agreement during the Term to sell, transfer or convey ownership of the Properties in whole or in part, whether individually or as part of a package, or a sale of the Properties at a bankruptcy auction, or other sale permitted by the bankruptcy court, such as a sale under Section 363 of the Bankruptcy Code or pursuant to a confirmed plan of reorganization, regardless of whether the closing occurs after the expiration of the Term and regardless of whether the Debtor engages a different broker or advisor to close a transaction provided however such transaction must close for Rosewood to be entitled to any commission

E.      <u>Bid Qualifications</u>. Any potential bidder, other than the Stalking Horse Bidder, who wishes to submit a bid with respect to the Properties must demonstrate to the satisfaction of the Debtor that such potential bidder is a "<u>Qualified    Bidder</u>." The Stalking Horse Bidder is a Qualified Bidder without the need to satisfy the requirements to be a Qualified Bidder otherwise set forth herein. A Qualified Bidder is a potential bidder who delivers to the Debtor and the Broker a written and signed, binding offer **on or before February  , 2022 at 4:00 p.m.** (the "<u>Bid Deadline</u>") that:

    (i)     states that the bidder has entered or will enter into a purchase sale agreement for the acquisition of the Properties on terms and conditions reasonably substantially similar to the PSA;

    (ii)    states the bidder's offer is irrevocable, and not contingent until the closing of the purchase of the Properties if such bidder is the Successful Bidder (as hereinafter defined);

    (iii)   does not request or entitle the bidder to any transaction or break-up fee, expense reimbursement or similar type of payment;

    (iv)   does not contain any financing contingencies or any other contingencies;

    (v)    fully discloses the identity of each entity that will be bidding for the Properties (the "<u>Competing Bidder</u>") or otherwise participating in connection with such bid on behalf of the Competing Bidder, the terms of any such participation (including, if the Competing Bidder is an entity formed for the purpose of consummating the proposed transaction contemplated by the bid, the equity holder or other financial backer), the Competing Bidder's address, telephone number and email address where

the bidder may be contacted;

(vi)     is accompanied by evidence that a good faith deposit in the amount of 10% of the Competing Bidder's bid (the "Bid Deposit"), in immediately available funds, has been made (or is concurrently being made) by wire transfer to Shafferman & Feldman LLP, as escrow agent (the "Escrow Agent"), pursuant to wire instructions to be provided by the Debtor's counsel, and acknowledges that the Bid Deposit shall be held by the Escrow Agent in a non-interest bearing, segregated, account of the Escrow Agent for the Debtor's estate in accordance with the terms hereof;

(vii)    states that the bidder is financially capable of consummating the transaction contemplated by the bidder's bid and any increased or modified bid that may be made at the Auction;

(viii)   is accompanied by financial information satisfactory to the Debtor which fairly and reasonably demonstrates the Competing Bidder's ability (and the sources of the Competing Bidder's ability) to close on its purchase of the Property if the Competing Bidder should be the Successful Bidder, in an amount at least as much as its bid as necessary to consummate the transaction contemplated by the bidder's bid and any increased or modified bid that may be made at the Auction;

(ix)     includes an executed original of these Terms and Conditions of Sale acknowledging and agreeing to these Terms and Conditions of Sale, including the following:

(a)     the Competing Bidder is not a partner, officer, director, stockholder, agent, employee or insider of the Debtor, the Debtor's principals, the Broker, principals or any relative of any of the foregoing, unless waived in writing by the Debtor prior to the Bid Deadline;

(b)     the Competing Bidder relied solely on its own independent investigation, analysis, appraisal and evaluation of the Properties and it did not rely upon and did not receive any written or oral statements, representations, warranties, promises or guarantees whatsoever, whether express or implied or by operation of law or otherwise, with respect to the Properties and waives any and all claims against the Debtor and Broker; and

(c)     the Competing Bidder's bid is irrevocable until the earlier of the Closing Date (as defined herein) or until its bid is affirmatively rejected;

(d)     the Competing Bidder is financially able to acquire the Properties in cash, without contingencies as to financing and/or additional due diligence;

(e)     the Competing Bidder, if it is the Successful Bidder, will complete the Auction Sale in accordance with the timing set forth in these Terms and Conditions of Sale;

24

(f)     the Competing Bidder, if it is the Successful Bidder, will pay the Broker the commission at closing;

(g)     the Competing Bidder's offer shall not be binding prior to the time that the Auction is conducted and the Sale of the Properties approved by the Bankruptcy Court;

(h)     includes evidence of authorization and approval from the bidder's board of directors (or comparable governing body) to purchase the Properties pursuant to its bid at the Auction Sale; and

(i)     contains other information reasonably requested by the Debtor and/or the Broker.

A competing bid meeting the above requirements shall constitute a "Qualified Bid." The Debtor, in consultation with the Broker, shall make a determination regarding whether a bid is a Qualified Bid and the Broker shall notify bidders whether their bids have been determined to be qualified by no later than **February , 2022, at 4:00 p.m. (prevailing Eastern Time).**

F.          <u>Other Asset Included in Sale</u>. In addition to the Properties, the Auction Sale will also include all right, title, and interest of the Debtor or its estate in any claim or cause of action it may have against any neighboring property owners, tenant, subtenant, and/or holdover tenant     of the Properties and any and all intellectual property rights associated with the     Properties, including but not limited to plans, specifications, permits and     approvals.

G.          <u>Bidding</u>. In addition to delivering a Bid Deposit, any Competing Bidder must offer a competing bid that satisfies the following terms and conditions: (i) the Competing Bid shall provide for a purchase price of at least $14,170,000.00, inclusive of  a "Breakup Fee, in the amount of $412,250, (the "Initial Bid"), with subsequent minimum bid increments of $50,000.00 per bid thereafter, or such other amount the Debtors, in their sole discretion, deem appropriate; (ii) the Competing Bid shall be substantially similar to the terms and conditions of the PSA; (iii) the Competing Bidder must agree to be bound by the terms and conditions of the PSA; (iv) the Competing Bid shall not be contingent upon the receipt of financing necessary to its consummation, and the Competing Bidder shall have demonstrated, to the sole satisfaction of the Debtors, evidence of its ability to conclude the transaction upon the terms and conditions of the PSA, without delay; and (v) the Competing Bid shall not be conditioned upon the outcome of unperformed due diligence by the Competing Bidder with respect to the Properties. At the conclusion of the Auction Sale, the Competing Bidder making the highest or best Competing Bid must execute and agree to be bound by the PSA and these Bid Procedures.

H.          Credit Bid.  LIC may, but is not required to, submit an initial credit bid up to $13,000,000, or such other amount as may be determined by the Bankruptcy Court before the Auction Sale, for the Properties and pay all other senior liens, claims and encumbrances at closing. To the extent that there is a Competing Bid, LIC may increase its credit bid to include post-petition interest and expenses permitted under 11 U.S.C. Section 506(b).

I.          Adjournment and Cancellation of Auction. The Debtor reserves the right, in its business judgment, to make one or more adjournments to, or cancel, the Auction Sale  to, among other things (i) facilitate discussions between the Debtor, on the one hand, and one or more Qualified Bidders, on the other hand, (ii) allow the Debtor and/or Qualified Bidders to consider how they wish to proceed, (iii) give Qualified Bidders the opportunity to provide the Debtor with such additional documentation or information as the Debtor in its business judgment may require to determine such Qualified Bidder's ability to close the Auction Sale, or (iv) facilitate higher or better bids.

J.          Successful Bidder and Backup Bidder.  At the Auction Sale, once a bidder is determined by the Plan, the Debtor, in consultation with its professionals and LIC, to have made the highest or best offer for the Properties (the "Successful Bidder"), bidding shall be deemed closed and no additional bids will be considered. The bidder with the next highest or best bid submitted at the  Auction Sale, as determined by the Debtor, in consultation with its  professionals  and LC, shall be the "Backup Bidder." In determining  the Successful Bidder and the Backup  Bidder, the Debtor may consider, without limitation, (i) the amount of the purchase price offered, (ii) the form of consideration  offered,  (iii)  the Qualified Bidder's ability to close the Sale at the amount of its last bid made at the Auction, and the timing thereof, (iv) indicia of good faith on the part of the Qualified Bidder, (v) the terms and conditions of the Qualified Bidder PSA, and (vi) the net benefit to the Debtor's estate.

K.          Successful Bidder Additional Deposit. Within one business day after the Successful Bidder is determined, the Successful Bidder (except for LIC's designee) shall be required to increase the Bid Deposit to an amount equal to ten percent (10%) of the purchase price of the winning bid (the "Purchase Price"), which amount shall serve as a good faith deposit against payment of the  Purchase Price, **TIME BEING OF THE ESSENCE AS TO THE SUCCESSFUL BIDDER'S OBLIGATION TO INCREASE THE DEPOSIT**. Within two (2) business days after the conclusion of the Auction, the Debtor's counsel will return the Bid Deposits to all other bidders, other than the Backup Bidder (as defined below).

L.          Sale Hearing. A hearing to consider approval of the Sale of the Properties to the successful bidder (the "Sale Hearing") is scheduled to take place on February   , 2022 at    m., prevailing Eastern Time, or as soon thereafter as counsel may be heard to be conducted telephonically at Dial in Number 888-273-3658; Access Code 2872314, before the Honorable Jil Mazer-Marino, United States Bankruptcy Judge for the Eastern District of New York, or as otherwise ordered by the

Bankruptcy Court. The Sale Hearing may be adjourned or rescheduled without notice by an announcement of the adjourned date at the Sale Hearing or by filing a notice on the docket of the Debtor's case. At the Sale Hearing, the Debtor shall present the Successful Bid to the Bankruptcy Court for approval.

M.      <u>Sale Order</u>. The sale approval order (the "Sale Order") shall approve the Auction Sale free and clear of all liens, claims, and encumbrances, and in connection therewith, the Sale Order shall contain the following findings of fact and conclusions of law: that the terms of the Sale are fair and reasonable, (ii) that the Auction Sale, and the Purchaser's purchase, of the Properties pursuant to the Plan, is non-collusive, fair and reasonable and was conducted openly and in good faith, (iii) that the transfer of the Properties to the Purchaser represents an arm's-length transaction and was negotiated in good faith between the parties, (iv) that the Purchaser, as transferee of the Properties, is a good faith Purchaser under Bankruptcy Code section 363(m) and, as such, is entitled to the full protection of Bankruptcy Code section 363(m), (v) the sale of the Properties to the Purchaser was not controlled by an agreement among potential purchasers, and (vi) that no cause of action exists against the Purchaser or with respect to the sale of the Properties to the Purchaser under Bankruptcy Code section 363(n).

N.      <u>Closing</u>. The Successful Bidder must pay the balance of the Purchase Price for the Properties (the difference between the amount of the successful bid and the Bid Deposit as increased by the supplemental deposit in Paragraph J above) to counsel for the Debtor in full in cash at the closing of title to the Properties (the "<u>Closing</u>"). The Successful Bidder must close title to the Properties at a date mutually acceptable to the Successful Bidder and the Debtor (the "<u>Closing Date</u>") that is no more than twenty-one (21) days after the Sale Order is entered, **TIME BEING OF THE ESSENCE** as to the Successful Bidder, although such date may be extended solely by the Debtor.

O.      <u>Exemption from Transfer Tax</u>. Under the Plan, to the maximum extent provided by section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of any security and the making or delivery of any instrument of transfer under the Plan (including an instrument of transfer executed in furtherance of the Sale), shall not be subject to tax under any law imposing a stamp tax, real estate transfer tax, mortgage recording tax, mansion tax, or similar tax due on the sale of the Properties in connection with or in furtherance of the Plan. If the Stalking Horse is the prevailing purchaser, it may elect to retain its recorded mortgages in the principal amounts of $17,580,000 on the Properties.

P.      <u>Damages for Buyer's Failure to Close</u>. **TIME IS OF THE ESSENCE AS AGAINST THE SUCCESSFUL BIDDER AND THE FAILURE OF THE SUCCESSFUL BIDDER TO EITHER TIMELY PAY THE ADDITIONAL BID DEPOSIT OR TIMELY CLOSE FOR ANY REASON WHATSOEVER (EXCEPT AS OTHERWISE PROVIDED BELOW),**

**INCLUDING ITS FAILURE TO PAY THE BALANCE OF THE PURCHASE PRICE ON THE CLOSING DATE, WILL RESULT IN THE DEBTOR RETAINING THE DEPOSIT AS LIQUIDATED DAMAGES AND THE TERMINATION OF THE SUCCESSFUL BIDDER'S RIGHT TO ACQUIRE THE PROPERTY.** The Successful Bidder shall be obligated to close title to the Properties and there is no contingency of any kind or nature that will permit the Successful Bidder to cancel or avoid its obligation under these Terms and Conditions of Sale other than the inability to deliver a bargain and sale deed without covenants against grantor's acts to the Properties. Expenses incurred by the Successful Bidder, or any competing bidder relating to any due diligence, such as obtaining title reports or environmental inspections, shall be the sole responsibility of such bidder, and under no circumstances shall the Debtor's or the Debtor's professionals be responsible for, or pay, such expenses.

Q.      <u>Backup Bidder</u>. In the event that the Successful Bidder fails to tender the payment of the balance of the Purchase Price on the Closing Date, or otherwise perform any of its obligations under these Terms and Conditions of Sale, the Debtor, at its sole option, shall be authorized to sell the Properties to the Backup Bidder without any further notice, and without giving credit for the deposit forfeited by the Successful Bidder, and upon such other terms and conditions as the Debtor deems appropriate. Should the Backup Bidder fail to close on the Property, within such time as the parties may agree but not to exceed thirty (30) days after notice from the Debtor to the Backup Bidder, the Debtor shall be authorized to sell the Properties to the next highest or best bidder, without the necessity of any further notice. All bidders will be bound by these Terms and Conditions of Sale, including, without limitation, those items set forth in the paragraphs above, except that the Backup Bidder must close within thirty (30) days of notification that its bid is accepted, **TIME BEING OF THE ESSENCE** as to the Backup Bidder.

R.      <u>As Is Sale</u>. The Properties are being sold free and clear of all liens, claims, and encumbrances, with any such liens, claims and encumbrances to attach to the net proceeds of sale after deduction of any expenses of sale. Furthermore, the Properties are being sold "AS IS," "WHERE IS," "WITH ALL FAULTS," without any representations, covenants, guarantees or warranties of any kind or nature whatsoever and subject to, among other things, (i) any state of facts that an accurate survey may show; (ii) any covenants, restrictions and easements of record; (iii) any state of facts a physical inspection may show; (iv) any building or zoning ordinances or other applicable municipal regulations and violations thereof; and (v) environmental conditions, including, without limitation, the Properties compliance (or lack of compliance) with environmental laws and the presence or absence of underground fuel storage tanks, any hazardous materials or asbestos anywhere on the Properties. By delivering its respective Bid Deposit, each bidder is deemed to have acknowledged that it has had the opportunity to review and inspect the Properties, the state of title thereof and laws, rules and regulations applicable thereto, and will rely solely thereon and on its own independent investigations and inspections of the Properties in making its bid. Neither the Debtor nor any of its representatives make any representations or

warrantees with respect to the permissible uses of the Properties, including but not limited to, the zoning of the Properties. All bidders are deemed to have acknowledged that they have conducted their own due diligence in connection with the Properties, and are not relying on any information provided by the Debtor or their professionals.

S.          <u>Deed</u>. The Debtor shall convey the Properties by delivery of a bargain and sale deed without covenants against grantor's acts.

T.          <u>Auctioneer</u>. Rosewood will serve as auctioneer to conduct the Auction Sale, if held.

U.          <u>Right to Withdraw Sale</u>. The Debtor reserves its right to withdraw the Property from the Auction Sale, either prior or subsequent to the Auction Sale, for any reasonable reason, as the Debtor deems necessary or appropriate.

V.          <u>LIC's Designee</u>. Notwithstanding anything to the contrary herein, LIC shall be entitled to name a designee or designees who shall be deemed qualified to bid without posting a Bid Deposit or complying with the other requirements otherwise necessary to bid, and, if LIC is the Successful Bidder, shall be entitled to purchase the Property subject to some or all of the its mortgage.

W.          <u>Bankruptcy Court Jurisdiction</u>. The Bankruptcy Court shall determine any disputes concerning the Sale of the Properties. By participating in the Auction Sale, all bidders consent to the jurisdiction of the Bankruptcy Court to determine such disputes under the Debtor's pending chapter 11 case.

X.          <u>Reservation of Rights</u>. The Debtor is authorized to amend and modify these Terms and Conditions of Sale to impose additional terms and conditions on the proposed Auction and Sale of the Properties, or to modify or eliminate any of the terms and conditions contained herein if, (i) in the Debtor's reasonable judgment, such modifications would be in the best interest of maximizing value from the Sale and promote an open and fair Auction and Sale process, and (ii) such modifications and/or additional terms and conditions are not materially inconsistent with the provisions of these Terms and Conditions of Sale.

I have read these Terms and Conditions and agree to be bound by them. **(Please  print clearly)**

Date:            _____

Bidder:         _____

Signature:      _____

Title:          _____

Address:        _____

E-Mail:         _____

Phone No.:      _____

Attorney Info: _____

# EXHIBIT "B" TO PROPOSED ORDER

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
In re:                                                   Chapter 11

25-16 37th AVE OWNERS, LLC,                               Case No:  21-42662-jmm

                            Debtor.
---------------------------------------------------------x

## NOTICE TO CREDITORS AND OTHER PARTIES IN INTEREST OF SALE FOR THE REAL PROPERTIES KNOWN AS AND LOCATED AT 25-12 AND 25-16 <u>37TH AVENUE, LONG ISLAND CITY, NEW YORK 11101</u>

**PLEASE TAKE NOTICE** that, on October 19, 2021 ("Petition Date"), 25-16 37th Ave Owners, LLC (the **"Debtor"**) filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code ("Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of New York ("Bankruptcy Court").

**PLEASE TAKE FURTHER NOTICE** that, by Order entered on December   , 2021, the Bankruptcy Court approved the retention Rosewood Realty Group as real estate broker (the **"Broker"**) to sell the Debtor's real properties known as and located 25-12 and 25-16 37th Avenue, Long Island City, New York 11101 (the "Properties").

**PLEASE TAKE FURTHER NOTICE** that, pursuant to an Order entered on December   , 2021 ("Sale Procedure Order"), the Bankruptcy Court authorized the Debtor to sell the Properties.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to Bankruptcy Code §§ 363(b) and (f), Bankruptcy Rule 6004, Local Bankruptcy Rule 6004-1 and the Sale Procedure Order, the Assets will be sold free and clear of all liens, claims and encumbrances, with such liens, claims and encumbrances to attach to the net proceeds of sale payable to the Debtor's estate pursuant to the Sale Procedure Order.

**PLEASE TAKE FURTHER NOTICE** that the Properties are being sold "as is", "where is", without any representations of any kind or nature whatsoever, including as to merchantability or fitness for a particular purpose, and without warranty or agreement as to the condition of such Properties.

**PLEASE TAKE FURTHER NOTICE** that, the Auction, if held, shall be conducted telephonically or by videoconference  on **February   , 2022 at 11:00 a.m.** (prevailing Eastern Time), or at such later time as may be determined in the Debtor's discretion.

**PLEASE TAKE FURTHER NOTICE** that any entity wishing to place a bid for the Properties shall be subject to the following terms as set forth in the Terms and Conditions of Sale/Bidding Procedures Order, a copy of which is attached hereto as Exhibit "A":

**PLEASE TAKE NOTICE**, that the Debtor will seek Court approval of the Auction Sale at a hearing to be held on **February   , 2022 at m. at hearing to be held the Honorable Jil Mazer-Marino,**

2

United States Bankruptcy Judge for the Eastern District of New York to be conducted telephonically at Dial in Number 888-273-3658; Access Code 2872314 (the "Sale Hearing"). At the Sale Hearing, the Debtor shall present the results of the Auction to the Court and seek approval for the Successful Bid and any Backup Bid.

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to that part of the relief sought in the Motion not otherwise approved by this Order, including the Sale of the Properties free and clear of liens, shall be (i) filed with the Bankruptcy Court by February   , 2022, at 4:00 p.m. electronically by registered users of the Court's electronic case filing system and, by all other parties in interest, mailed to the Clerk of the United States Bankruptcy Court for the Eastern District of New York, 271-C Cadman Plaza East, Suite 1595, Brooklyn, New York 11201-1800 and (ii) upon: (a) attorneys for the Debtor, Shafferman & Feldman LLP, 137 Fifth Avenue, 9th Floor, New York, New York 10010, Attn: Joel Shafferman, Esq.; (b) the United States Trustee, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, New York 10014, Attn: Reema Lateef, Esq.

**PLEASE TAKE FURTHER NOTICE** that that the failure to file an objection prior to the Sale Objection Deadline shall forever bar, preclude and disqualify you from asserting an objection to the Motion at the Sale Hearing or to the Bankruptcy Court's entry of findings and rulings sought therein.

**PLEASE TAKE FURTHER NOTICE** that requests for information about the Properties can be obtained by contacting counsel to the Debtor, Shafferman & Feldman, Attn: Joel  Shafferman, Esq., at (212) 509-1802, shaffermanjoel@gmail.com or Rosewood Realty Group, Attn: Greg Corbin at (212)359-9900, greg@rosewoodrg.com.

Dated: New York, New York
       January   , 2022

**BY ORDER OF THE COURT**
Shafferman & Feldman LLP
Counsel to the Debtor
137 Fifth Avenue, 9th Floor
New York, New York 10010
(212) 509-1802

# EXHIBIT B TO MOTION

**CONTRACT OF SALE** dated the _____ day of December, 2021

Between

**25-16 37TH AVE OWNERS, LLC** a New York Limited Liability Company, having an office and place of business at 3284 N 29th Court Hollywood, FL 33020 ("Seller") and

**LIC SENIOR DEBT LLC, OR ITS DESIGNEE,** a New York Limited Liability Company, having an office and place of business at 361 15th Street, Hoboken NJ 07030-0000 ("Purchaser").

Seller and Purchaser hereby covenant and agree as follows:

**W I T N E S S E T H:**

WHEREAS, Seller owns the premises known as and located at 25-12 and 25-16 37th Avenue, Long Island City, New York 11101, as more fully described in the detailed property description set forth in Schedule A and section 1.01, _infra_ (the "Premises"), and commenced a case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on October 19, 2021 (the "Bankruptcy Case") in the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court");

WHEREAS, Purchaser desires to acquire the Premises on the terms set forth herein; and

WHEREAS, Seller desires to sell the Premises to Buyer upon the terms and conditions set forth herein.

NOW THEREFORE, in consideration of the Premises and of the mutual covenants and agreements contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby mutually acknowledged, intending to be legally bound, the Parties hereby agree as follows:

**Schedule A**
**DESCRIPTION OF PREMISES**

The Premises are located at or known as 25-12 and 25-16 37th Avenue, Long Island City, New York 11101, and are more fully described in the detailed property description set forth in Exhibit A.

Tax Map Designation:
**Block:  00368, Lots 0021 and 0022,**
( ☒ metes and bounds description attached hereto)

5

**Schedule B**
**PERMITTED EXCEPTIONS**

1.      Zoning regulations and ordinances which are not violated by the existing structures or present use thereof and which do not render title unmarketable or uninsurable.

2.      Consents by the Seller or any former owner of the Premises for the erection of any structure or structures on, under or above any street or streets on which the Premises may abut.

3.      Unpaid installments of assessments not due and payable on or before the Closing Date.

4.      Rights of utility companies to lay, maintain install and repair pipes, lines, poles, conduits, cable boxes and related equipment on, over and under the Premises, provided that none of such rights imposes any monetary obligation on the owner of the Premises.

5.      Encroachments, of less than six inches, of stoops, areas, cellar steps, trim cornices, lintels, window sills, awnings, canopies, ledges, fences, hedges, coping and retaining walls projecting from the Premises over any street or highway or over any adjoining property and encroachments of similar elements projecting from adjoining property over the Premises that do not materially impact the use and enjoyment of the Premises.

6.      Revocability or lack of right to maintain vaults, coal chutes, excavations or sub-surface equipment beyond the line of the Premises.

7.      Any state of facts that an accurate survey would disclose, provided that such facts do not render title unmarketable or uninsurable.

**Schedule C**
**PURCHASE PRICE**

The Purchase Price shall be $13,310,000, broken down as follows: (i) LIC's credit bid, in the amount of $13,000,000; (ii) $100,000 to be used to pay holders of allowed unsecured claims pursuant to the Debtor's Liquidating Plan of Reorganization (the "Plan"); and (ii) LIC's commitment to pay all allowed administrative, priority claims, and Bankruptcy Fees pursuant to the Plan, in the approximate amount of $210,800.

**Schedule D**
**MISCELLANEOUS**

1.      Title insurer designated by Purchaser (§1.02): TBD

2.      Seller's tax identification number(s) (§2.05): 47-3389948

3.      Purchaser's tax identification number(s) (§2.05): TBD

4.      Scheduled time and date of Closing (§3.01): Within thirty (30) days after entry of an Order by the Bankruptcy Court confirming a Chapter 11 Plan of Reorganization.

5.      Place of Closing (§3.01): TBD.

6.      Assessed valuation of Premises (§4.10): N/A

6

7.      Assessments on Premises (§4.13): N/A

8.       Maximum Amount which Seller must spend to cure violations, etc. (§7.02):
         $5,000.00

9.      Maximum Expense of Seller to cure title defects, etc. (§13.02): $5,000.00

10.     Broker, if any (§14.01):  Rosewood Realty Group

11.     Party to pay broker's commission (§14.01): Seller

12.      Address for notices (§15.01):


      If to Seller:          25-16 37th Ave Owners,LLC
                             c/o David Goldwasser
                             3284 N 29th Court
                             Hollywood, FL 33020

      with a copy to:        Shafferman & Feldman LLP
                             137 Fifth Avenue, 9th\ :sup:`h` Floor
                             New York, NY 10010
                             Attn: Joel Shafferman, Esq.

      If to Purchaser:       LIC Senior Debt LLC, or its Designee
                             361 15th street
                             Hoboken NJ 07030-0000

      with a copy to:        Robinson Brog Leinwand
                             Greene Genovese & Gluck P.C.
                             875 Third Avenue
                             New York, NY 10022
                             Attn: Robert M. Sasloff, Esq.


13.     Limitation Date for actions based on Seller's surviving representations and other
obligations (§16.01): Survive indefinitely

14.     Transfer Taxes:  Seller to pay all real estate transfer taxes, if any.

15.     Downpayment:  $00.00.

## Section 1. Sale of Premises and Acceptable Title

§1.01. Seller shall sell to Purchaser, and Purchaser shall purchase from Seller, at the price and upon the terms and conditions set forth in this contract:

(a) the parcel of land more particularly described in Schedule A attached hereto ("Land");

(b) any and all interest in all  buildings and improvements situated on the Land (collectively,  "Building"), including, but not  limited to, all  intellectual property  rights relating

7

thereto, including but not limited to plans, specifications, permits and approvals

(c)  all right, title and interest of Seller, if any, in and to the land lying in the bed of any street or highway in front of or adjoining the Land to the center line thereof and to any unpaid award for any taking by condemnation or any damage to the Land by reason of a change of grade of any street or highway;

(d) the appurtenances and all the estate and rights of Seller in and to the Land and Building, including all appurtenances, hereditaments, tenants, easements, and other benefits, now or hereafter existing in respect of the Land, including but not limited to riparian and littoral rights;

(e) all right, title and interest of Seller, if any, in and to the fixtures, equipment and other personal property attached or appurtenant to the Building (collectively, "Premises"); and

(f)  all right, title and interest of Seller in and to any and all rights associated with any Zoning Lot Development Agreements affecting the Premises.

(g) Any and all rights under any title insurance policies that have been issued with the Debtor as an insured party.

The Premises are located at or known as:
Tax Map Designation:  **Block: 00368, Lot 0022**

§1.02. Seller shall convey and Purchaser shall accept fee simple title to the Premises as Purchaser's title insurer specified in Schedule D shall be willing to approve and insure in accordance with its standard form policies approved by the New York State Department of Financial Services, and subject only to:

(a)  the matters set forth in Schedule B herein (collectively, "Permitted Exceptions"); and,

(b)  such other matters as (i) the title insurer specified in Schedule D herein (or if none is so specified, then any member of the New York Board of Title Underwriters) shall be willing, without special premium, to omit as exceptions to coverage or to except with insurance against collection out of or enforcement against the Premises at no additional cost to the Purchaser.

§1.03.  Notwithstanding anything to the contrary contained herein, Seller shall release and discharge at the Closing, the following Existing Mortgage, at Purchaser's Option: Mortgages held by LIC Senior Debt LLC.  All other liens and encumbrances shall not attach to the Property pursuant to bankruptcy court order.

**Section 2.  Purchase Price, Acceptable Funds, Existing Mortgages, Purchase Money Mortgage and Escrow of Downpayment**

§2.01. The purchase price ("Purchase Price") to be paid by Purchaser to Seller for the Premises is $13,310,000, broken down as follows: (i) LIC's credit bid, in the amount of $13,000,000; (ii) $100,000 to be used to pay holders of allowed unsecured claims pursuant to the Plan; and (ii) LIC's commitment to pay all allowed administrative, priority claims, and

Bankruptcy Fees pursuant to the Plan, in the approximate amount of $210,000

§2.02. All monies payable under this contract, unless otherwise specified in this contract, shall be paid by:

(a) certified checks of Purchaser or any person making a purchase money loan to Purchaser drawn on any bank, savings bank, trust company or savings and loan association having a banking office in the State of New York; or

(b) official bank checks drawn by any such banking institution, payable to the order of Seller, except that uncertified checks of Purchaser payable to the order of Seller up to the amount of $1,000.00 shall be acceptable for sums payable to Seller at the Closing.

§2.03. INTENTIONALLY OMITTED

§2.04. (a) If the sum paid under paragraph (a) of Schedule C or any other sums paid on account of the Purchase Price are required to be paid prior to the Closing (collectively, "Downpayment") are paid by check or checks drawn to the order of and delivered to Seller's attorney or another escrow agent ("Escrowee"), the Escrowee shall hold the proceeds thereof in escrow in a special bank account (or as otherwise agreed in writing by Seller, Purchaser and Escrowee) until the Closing or sooner termination of this contract and shall pay over or apply such proceeds in accordance with the terms of this section. Escrowee need not hold such proceeds in an interest-bearing account, but if any interest is earned thereon, such interest shall be paid to the same party entitled to the escrowed proceeds, and the party receiving such interest shall pay any income taxes thereon. The tax identification numbers of the parties are either set forth in Schedule D or shall be furnished to Escrowee upon request. At the Closing, such proceeds and the interest thereon, if any, shall be paid by Escrowee to Seller. If for any reason the Closing does not occur and either party makes a written demand upon Escrowee for payment of such amount, Escrowee shall give written notice to the other party of such demand. If Escrowee does not receive a written objection from the other party to the proposed payment within 10 business days after the giving of such notice, Escrowee is hereby authorized to make such payment. If Escrowee does receive such written objection within such 10 day period or if for any other reason Escrowee in good faith shall elect not to make such payment, Escrowee shall continue to hold such amount until otherwise directed by written instructions from the parties to this contract or a final judgment of a court. However, Escrowee shall have the right at any time to deposit the escrowed proceeds and interest thereon, if any, with the clerk of the US Bankruptcy Court of the county in which the Land is located. Escrowee shall give written notice of such deposit to Seller and Purchaser. Upon such deposit Escrowee shall be relieved and discharged of all further obligations and responsibilities hereunder.

(b) The parties acknowledge that Escrowee is acting solely as a stakeholder at their request and for their convenience, that Escrowee shall not be deemed to be the agent of either of the parties, and that Escrowee shall not be liable to either of the parties for any act or omission on its part unless taken or suffered in bad faith, in willful disregard of this contract or involving gross negligence. Seller and Purchaser shall jointly and severally indemnify and hold Escrowee harmless from and against all costs, claims and expenses, including reasonable attorneys' fees, incurred in connection with the performance of Escrowee's duties hereunder, except with respect to actions or omissions taken or suffered by Escrowee in bad faith, in willful disregard of this contract or involving gross negligence on the part of Escrowee.

(c)  Escrowee has acknowledged agreement to these provisions by signing in the place indicated on the signature page of this contract.

## Section 3. The Closing

§3.01. Except as otherwise provided in this contract, the closing of title pursuant to this contract ("Closing") shall take place on the scheduled date and time of closing specified in Schedule D (the actual date of the Closing being herein referred to as "Closing Date") at the place specified in Schedule D.

## Section 4. Representations and Warranties of Seller

Seller represents and warrants to Purchaser as follows:

§4.01. Seller is the sole owner of the Premises.

§4.02. Seller is a duly organized and validly existing limited liability company under the laws of the State of New York.  Seller is in good standing, and upon the issuance of the Bankruptcy Court Order, Seller shall have the full capacity, right, power and authority to enter into this Agreement and to perform its obligations hereunder. The execution and delivery of this Agreement has been duly authorized by all necessary and appropriate action of Seller.

§4.03. As of the date of this Agreement, Seller represents that it has no knowledge, of, nor has received any notice of, any special assessments against the Premises.

§4.04.  To the best of Seller's knowledge there are no Environmental Conditions (as defined in Section 18) affecting the Premises.

## Section 5. Acknowledgments of Purchaser

Purchaser acknowledges that:

§5.01. Purchaser has inspected the Premises, is fully familiar with the physical condition and state of repair thereof, shall accept the Premises **"As Is"** and in their present condition, subject to reasonable use, wear, tear and natural deterioration between now and the Closing Date, without any reduction in the Purchase Price for any change in such condition by reason thereof subsequent to the date of this contract.

§5.02. Before entering into this contract, Purchaser has made such examination of the Premises, the operation, income and expenses thereof and all other matters affecting or relating to this transaction as Purchaser deemed necessary. In entering into this contract, Purchaser has not been induced by and has not relied upon any representations, warranties or statements, whether express or implied, made by Seller or any agent, employee or other representative of Seller or by any broker or any other person representing or purporting to represent Seller, which are not expressly set forth in this contract, whether or not any such representations, warranties or statements were made in writing or orally.

## Section 6. Seller's Obligations as to Leases and Tenancies

§6.01. Unless otherwise provided in a schedule attached to this contract, between the

date of this contract and the Closing, Seller shall not permit occupancy of any kind, or enter into any new lease, license or occupancy agreement for any portion of the Premises, including space in any Building or at the pier, which is presently vacant or which may hereafter become vacant.

## Section 7.  Responsibility for Violations

§7.01. Except as provided in §2.01, §7.02 and §7.03, all notes or notices of violations of law or governmental ordinances, orders or requirements which were noted or issued prior to the date of Closing by any governmental department, agency, board or bureau having jurisdiction or authority as to lands, housing, buildings, fire, health and labor conditions affecting the Premises and all liens which have attached to the Premises prior to the Closing pursuant to the Administrative Code of the City of New York, if applicable, shall be removed or complied with by Seller.  The Premises shall be transferred free of them at Closing.  Seller shall furnish Purchaser with any authorizations necessary to make the searches that could disclose these matters.

§7.02. If the reasonably estimated aggregate cost to remove or comply with any violations or liens which Seller is required to remove or comply with shall exceed $5,000.00 (five thousand dollars), Seller shall have the right to cancel this contract, in which event the sole liability of Seller shall be as set forth in §13.02, unless Purchaser elects to accept title to the Premises subject to all such violations or liens, in which event Purchaser shall be entitled to a credit against the monies payable at the Closing.

## Section 8. Destruction, Damage or Condemnation

§8.01. The provisions of Section 5-1311 of the General Obligations Law shall apply to the sale and purchase provided for in this contract.

## Section 9. Covenants of Seller

Seller covenants that between the date of this contract and the Closing:

§9.01. Seller shall not modify or amend any Service Contract or enter into any new service contract unless same is terminable without penalty by the then owner of the Premises upon not more than 30 days' notice.

§9.02. Seller shall maintain in full force and effect until the Closing all existing insurance policies through the date of Closing.

§9.03. No fixtures, equipment or personal property included in this sale shall be removed from the Premises unless the same are replaced with similar items of at least equal quality prior to the Closing.

§9.04. Seller shall not withdraw, settle or otherwise compromise any protest or reduction proceeding affecting real estate taxes assessed against the Premises for any fiscal period in which the Closing is to occur or any subsequent fiscal period without the prior written consent of Purchaser, which consent shall not be unreasonably withheld. Real estate tax refunds and credits received after the Closing Date which are attributable to the fiscal tax year

11

during which the Closing Date occurs shall be apportioned between Seller and Purchaser, after deducting the expenses of collection thereof, which obligation shall survive the Closing.

§9.05. Seller shall allow Purchaser or Purchaser's representatives' access to the Premises, upon reasonable prior notice at reasonable times.

§9.06. Seller shall not enter into any agreements, or make any covenants or declarations affecting the Premises that could or would affect the Purchaser's right and ability to develop the Premises in any way that would otherwise be authorized under the New York City Zoning Resolution, including for example, by transferring available floor area and issuing light and air easements to properties, parcels or lands that are part of the same zoning lot as the subject Premises.

§9.07 Seller shall not do anything at the Premises that may violate the New York City Zoning Resolution or the New York City Building Code.

## Section 10. Seller's Closing Obligations

At the Closing, Seller shall deliver the following to Purchaser to the extent they are in Seller's possession:

§10.01. A statutory form of bargain and sale deed with covenant against grantor's acts, containing the covenant required by Section 13 of the Lien Law, and properly executed in proper form for recording so as to convey the title required by this contract.

§10.02. All existing certificates, licenses, permits, authorizations and approvals issued for or with respect to the Premises by governmental and quasi-governmental authorities having jurisdiction.

§10.03. Such affidavits as Purchaser's title company shall reasonably require in order to omit from its title insurance policy all exceptions for judgments, bankruptcies or other returns against persons or entities whose names are the same as or similar to Seller's name.

§10.04. Checks to the order of the appropriate officers in payment of all applicable real property transfer taxes and copies of any required tax returns therefore executed by Seller and with Purchaser which checks shall be certified or official bank checks if required by the taxing authority.

§10.05. A bill of sale conveying Sellers' interest in the personal property included in the sale, if any.

§10.06.  A certificate of non-foreign status, in form required by Internal Revenue Code Section 1445 signed under penalty of perjury. Sellers understand that such certification will be retained by Purchaser and will be made available to the Internal Revenue Service on request.

§10.07.  A valid certificate(s), license(s), permit(s), authorization(s), and/or approval(s), that permits the existence and operation of the existing pier/dock at the Premises to the extent such documents are in the Seller's possession.

§10.07.  Any other documents required by this contract to be delivered by Seller.

## Section 11. Purchaser's Closing Obligations

12

At the Closing, Purchaser shall:

§11.01. Deliver to Seller checks in payment of the portion of the Purchase Price payable at the Closing, as adjusted for apportionments under Section 12.

§11.02. Cause the deed to be recorded, duly complete all required real property transfer tax returns and cause all such returns and checks, if any, in payment of such taxes to be delivered to the appropriate officers promptly after the Closing.

§11.03. Deliver any other documents required by this contract to be delivered by Purchaser.

## Section 12. Apportionments

§12.01. The following apportionments shall be made between the parties at the Closing as of the close of business on the day prior to the Closing Date:

(a) real estate taxes and vault charges, if any, on the basis of the fiscal period for which assessed, apportionment at the Closing shall be based on the last available reading, subject to adjustment after the Closing when the next reading is available;

(b) any other items listed in Schedule D herein.

If the Closing shall occur before a new tax rate is fixed, the apportionment of taxes at the Closing shall be upon the basis of the old tax rate for the preceding period applied to latest assessed valuation. Promptly after the new tax rate is fixed, the apportionment of taxes shall be recomputed. Any discrepancy resulting from such recomputation and any errors or omissions in computing apportionments at Closing shall be promptly corrected, which obligations shall survive the Closing.

## Section 13. Objections to Title, Failure of Seller or Purchaser to Perform and Vendee's Lien

§13.01. Purchaser shall promptly order an examination of title and shall cause a copy of the title report to be forwarded to Seller's attorney upon receipt. Seller shall be entitled to a reasonable adjournment or adjournments of the Closing for up to 60 days to remove any defects in or objections to title noted in such title report and any other defects or objections which may be disclosed on or prior to the Closing Date.

§13.02. If Seller shall be unable to convey insurable title to the Premises at the Closing in accordance with the provisions of this contract or if Purchaser shall have any other grounds under this contract for refusing to consummate the purchase provided for herein, Purchaser, nevertheless, may elect to accept such title as Seller may be able to convey with a credit against the monies payable at the Closing equal to the reasonably estimated cost to cure the same (up to $5,000.00), but without any other credit or liability on the part of Seller. If Purchaser shall not so elect, Purchaser may terminate this contract and the sole liability of Seller shall be to refund any Downpayment to Purchaser. Upon such refund, this contract shall be null and void and the parties hereto shall be relieved of all further obligations and liability other than any arising under Section 14. Seller shall not be required to bring any action or

13

proceeding or to incur any expense in excess of $5000.00 to cure any title defect or to enable Seller otherwise to comply with the provisions of this contract.

§13.03 Any unpaid taxes, assessments, together with the interest and penalties thereon to a date not less than two days following the Closing Date, and any other liens and encumbrances which Seller is obligated to pay and discharge or which are against corporations, estates or other persons in the chain of title, together with the cost of recording or filing any instruments necessary to discharge such liens and encumbrances of record, may be paid out of the proceeds of the monies payable at the Closing if Seller delivers to Purchaser on the Closing Date official bills for such taxes, assessments, interest and penalties and instruments in recordable form sufficient to discharge any other liens and encumbrances of record. Upon request made a reasonable time before the Closing, Purchaser shall provide at the Closing separate checks for the foregoing payable to the order of the holder of any such lien, charge or encumbrance and otherwise complying with §2.02. If Purchaser's title insurance company is willing to insure both Purchaser, if any, that such charges, liens and encumbrances will not be collected out of or enforced against the Premises, then, Seller shall have the right in lieu of payment and discharge to deposit with the title insurance company such funds or assurances or to pay such special or additional premiums as the title insurance company may require in order to so insure. In such case the charges, liens and encumbrances with respect to which the title insurance company has agreed so to insure shall not be considered objections to title.

§13.04. If Purchaser shall willfully default in the performance of its obligation under this contract to purchase the Premises, the sole remedy of Seller shall be to retain any Downpayment as liquidated damages for all losses, damages and expenses suffered by Seller, including without limitation the loss of its bargain.

§13.05. Purchaser shall have a vendee's lien against the Premises for the amount of the Downpayment, but such lien shall not continue after willful default by Purchaser under this contract.

**Section 14. Intentionally Deleted**

**Section 15. Notices**

§15.01. All notices under this contract shall be in writing and shall be delivered personally or by overnight delivery by nationally recognized courier, or by prepaid registered or certified mail, addressed as set forth in Schedule D herein.

**Section 16. Limitations on Survival of Representations, Warranties, Covenants and other Obligations**

§16.01. Except as otherwise provided in this contract, no representations, warranties, covenants or other obligations of Seller set forth in this contract shall survive three months after the Closing, and no action base thereon shall be commenced after such date. The representations, warranties, covenants and other obligations of Seller set forth in §6.01 and §6.02 shall survive until the Limitation Date specified in Scheduled D (or if none is so specified, the Limitation Date shall be the date which is two months after the Closing Date), and no action based thereon shall be commenced after the Limitation Date.

14

§16.02 The delivery of the deed by Seller, and the acceptance thereof by Purchaser, shall be deemed the full performance and discharge of every obligation on the part of Seller to be performed hereunder, except those obligations of Seller which are expressly stated in this contract to survive the Closing.

## Section 17. Miscellaneous Provisions

§17.01. No permitted assignment of Purchaser's rights under this contract shall be effective against Seller unless and until an executed counterpart of the instrument of assignment shall have been delivered to Seller and Seller shall have been furnished with the name and address of the assignee. The term "Purchaser" shall be deemed to include the assignee under any such effective assignment.

§17.02. This contract embodies and constitutes the entire understanding between the parties with respect to the transaction contemplated herein, and all prior agreements, understandings, representations and statements, oral or written, are merged into this contract. Neither this contract nor any provision hereof may be waived, modified, amended, discharged or terminated except by an instrument signed by the party against whom the enforcement of such waiver, modification, amendment, discharge or termination is sought, and then only to the extent set forth in such instrument.

§17.03. This contract shall be governed by, and construed in accordance with, the law of the State of New York.

§17.04. The captions in this contract are inserted for convenience of reference only and in no way define, describe or limit the scope or intent of this contract or any of the provisions hereof.

§17.05. This contract shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs or successors and permitted assigns.

§17.06. This contract shall not be binding or effective until properly executed and delivered by Seller and Purchaser.

§17.07. As used in this contract, the masculine shall include the feminine and neuter, the singular shall include the plural and the plural shall include the singular, as the context may require.

§17.08. If the provisions of any schedule or rider to this contract are inconsistent with the provisions of this contract, the provisions of such schedule or rider shall prevail.

§17.09.  This contract may be executed in counterparts, each of which shall be deemed to be an original as against any party whose signature appears thereon, and all of which shall together constitute one and the same instruments.  Faxed, scanned or emailed signatures of the parties shall be deemed originals, and shall binding on the party whose signature appears on the fax, scan or email.

§17.09.  This contract is subject to the approval, by way of the entry of an appropriate Order ("Bankruptcy Court Order", by the United States Bankruptcy Court for the Eastern District

of New York in connection with Seller's pending chapter 11 bankruptcy case *In Re 25-16 37th Ave. Owners LLC* (Case No. 21-42662 (JMM)).  Seller shall make prompt application for such approval to the Bankruptcy Court and shall cooperate and comply in good faith with any procedural requirements of the Bankruptcy Court in order to receive the Court's approval and confirmation.  In the event this Contract is not approved by the Bankruptcy Court and/or if the parties are otherwise prevented from closing by any act by the Court or other governmental or judicial body or agency, this Contract shall be null and void and Seller shall return to Purchaser the entire amount of Purchaser's downpayment and deposit without set-off or deduction.

**Section 18. Environmental Assessment and Audit**

Notwithstanding anything to the contrary contained in this Contract or in any other agreements between the Parties, the provisions set forth hereunder contain the Parties' exclusive agreement as to environmental due diligence matters relating to the Premises.

a.    As used herein, the following terms shall have the following meanings:

(i)    Applicable Laws shall include, but not be limited to, the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601 et seq.; the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901 et seq.; the Federal Water Pollution Control Act, 33 U.S.C. § 1251 et seq.; the Occupational Safety and Health Act of 1970, 29 U.S.C. § 651 et seq.; the New York State Environmental Conservation Law ("ECL"), Articles 1 through 71, and the regulations promulgated thereunder; and all other federal, state and local statutes, laws, ordinances, rules, guidance, guidelines, and regulations, and the like, and any notices and orders issued pursuant to any of the foregoing, concerning hazardous substances or public health and the environment, that govern or apply to environmental matters affecting the Premises.

(ii)    <u>Environmental Conditions</u> means any and all conditions existing on or about the Premises which: (a) constitute violations of the Applicable Laws; (b) subject Seller or Purchaser to potential liability under the Applicable Laws; (c) require remedial activity or investigation pursuant to the Applicable Laws; or (d) constitute environmental hazards under the Applicable Laws.

b.    Upon execution of this Contract, Purchaser shall have the right to retain a qualified environmental engineer to perform an environmental site assessment of the Premises, the purpose of which is to (i) identify environmental conditions at the Premises and (ii) to propose any additional environmental investigations that need to be performed at the Premises, as well as any remedial activities that are required under the Applicable Laws to protect Seller and Purchaser from potential liability.

c.    The Seller and Purchaser acknowledge that the results of the Environmental Report may be required to be disclosed to governmental authorities pursuant to the Applicable Laws.  Disclosure shall only be made, however, if strictly required by the Applicable Laws and only after Seller receives an opinion from its counsel that disclosure is required.  Purchaser or its agents shall not make any unilateral disclosure without the prior written consent of Seller's attorneys.  Otherwise, such disclosure shall be a material default under this Contract.

## Section 19.  <u>"Stalking Horse" Contract</u>

Notwithstanding anything herein or in the Rider to the contrary, this is a "stalking horse" contract of sale that is being entered into connection with the planned public auction of the Premises to be conducted on February   , 2022, at   m. at the United States Bankruptcy Court for the Eastern District of New York, at 271 Cadman Plaza East, Courtroom 3529, Brooklyn, New York 11201, in the matter of *In re: 25-16 37th Ave Owners, LLC* (Case No. 21-42662 (JMM)).  In the event that the public auction does not proceed or Purchaser is not the successful bidder at the public auction, then this contract shall be deemed null and void and cancelled and any Downpayment shall be refunded to the Purchaser forthwith and the Purchaser may be entitled to an additional "break up" fee as awarded by the Bankruptcy Court.

**IN WITNESS WHEREOF**, the parties hereto have executed this contract as of the date first above written.

LIC SENIOR DEBT LLC LLC
PURCHASER:

25-16 37TH AVE OWNERS
SELLER:

By:  _____

By:  _____
      David Goldwasser

Receipt by Escrowee, if any Downpayment required per this Contract:
The undersigned Escrowee hereby acknowledges receipt of, by check subject to collection, to be held in escrow pursuant to §2.04.

Shafferman & Feldman LLP
Joel Shafferman, Esq.

By: _____

**RIDER ATTACHED TO AND MADE A PART OF CONTRACT BETWEEN**

**25-16 37TH AVE OWNERS LLC**

("Seller") and

**LIC SENIOR DEBT LLC,**

("Purchaser"), concerning the Premises located at or known as:

Tax Map Designation:  **Block: 00368, Lots 0021 and 0022**

("Premises").

1.  The Purchaser shall take the premises subject to the following:

    a.) Any state of facts an accurate survey may show, provided such facts do not render title unmarketable or uninsurable.

    b.) Covenants, restrictions, easements and consents of record, provided they do not prohibit the erection or maintenance of the structures now on the premises, or affect the ability to develop the property in any way that would otherwise be permitted under the New York City Zoning Resolution.

    c.) Party wall and party wall agreements, if any.

    d.) Possible lack of right to maintain vault area under and coal chutes in the sidewalk.

    e.) Possible encroachments of retaining walls, bay windows, balconies, copings, cellar doors, sidewalk elevators, fences and fire escapes, and variations between record lines, and fences and retaining walls not exceeding one foot.

    f.) Rights, if any acquired by any utility company to maintain and operate lines, wires, cables, poles and distribution boxes in, over and upon said premises.

    g.) De minimis variations between description herein and tax map description.

2.  Seller shall deliver the Premises free and clear of any and all judgments, mortgages, liens, or encumbrances, including, but not limited to, the mortgages/liens held by LIC Senior Debt LLC.  Notwithstanding the foregoing, the existence of mortgages, liens or encumbrances shall not be objections to title, provided that properly executed instruments in recordable form necessary to fully satisfy same are delivered to the Purchaser at the closing of title together with recording and filing fees, if any, and such mortgage, liens or encumbrances may be paid out of the cash consideration paid by the Purchaser and the title company omits, and the Premises are delivered free and clear of such judgments, mortgages, liens or encumbrances at Closing.

3.  Unpaid liens for taxes and assessments shall not be objections to title, but the amount thereof, plus interest and penalties thereon shall be deducted from the consideration to be

paid hereunder, and allowed to the Purchaser, subject to the provisions for apportionment of taxes contained herein and title company assures against collection.

4.  Fuel on the premises on the date as of which adjustments shall be made, shall be paid for by the Purchaser, in cash or certified check or via adjustment, at the time of closing of title, at the cost thereof to the Seller, plus tax. The amount of fuel is to be estimated in writing by a fuel company for the Seller.

5.  The Seller has not made and does not make any representations as to the physical condition, income, expense, operation or any other matter or thing affecting or related to the aforesaid premises, except as herein specifically set forth, and the Purchaser hereby expressly acknowledges that no such representations have been made. Purchaser has examined and investigated to its full satisfaction the nature and condition of the real property hereby agreed to be sold and agrees to accept the same "AS IS". Purchaser, in executing this agreement and in undertaking to perform and in performing the same, does not rely upon any statements, representations or information by whomsoever made, whether verbal or written statements, representations by real estate brokers' "set-ups" or information pertaining to the above premises furnished by any real estate broker, agent, employee, servant or other person unless the same are specifically set forth herein. This contract sets forth the entire agreement of the parties hereto. The acceptance and delivery of the deed of conveyance at the time of closing of title shall be deemed to be full performance and discharge of any and all of the obligations on the part of the seller to be performed on his part pursuant to the terms and provisions of the contract, except as to those obligations which are specifically stated to survive the delivery of the deed.

6.  The parties mutually agree that all right, title and interest of the Seller in and to any and all personal property which may be in or upon the premises appurtenant to or used in connection with the operation thereof and owned by the Seller, shall be deemed transferred or conveyed to the Purchaser under the deed of conveyance to be delivered, but that no part of the purchase price shall be deemed to have been paid by the Purchaser for same.

7.  The Purchaser, at least ten (10) days prior to the closing of title, shall furnish to Seller's attorney a written notice of any objections to title.  Delivery of title report to the Seller's attorney shall satisfy this requirement.

8.  The acceptance of the deed by the Purchaser herein or assigns shall be deemed full compliance by the Seller of all the terms, covenants and conditions of this agreement on the part of the Seller to be performed, and no claims against the Seller shall survive the closing of title except as otherwise expressly stated herein.

9.  If any provision of this Rider shall conflict with any printed provision of this Agreement, the provision of the Rider shall control.

10. This contract is not assignable except that Purchaser shall have the right to assign the within contract to a corporation to be organized by it which it is the majority stockholder. Purchaser shall notify Seller in writing of such assignment, upon receipt of which such assignment shall be effective.

11. Notwithstanding anything to the contrary contained herein, the parties agree that any changes or additions on the within Contract may be initialed by the respective attorneys for the parties with the same force and effect as if initialed by the parties.

12. It is agreed that no party, other than the named Purchaser, shall be liable hereunder as disclosed or undisclosed principal.

13. Seller will not remove any supplies or equipment now on the Premises which are used in connection with the operation of the building.

14. Seller represents that any covenants or restrictions to which Purchaser takes title do not provide for forfeiture or reverter, in the event of violation thereof, nor do they impose any restriction on alteration or demolition of any improvements on the premises.

15. Seller will supply appropriate non-foreign affidavit pursuant to Section 1445 of the Internal Revenue Code as Amended, sufficient to provide an exemption under Subdivision (b) thereof, or if Seller is a foreign person under the terms of such Code, to comply with the provisions thereof.

16. Seller represents that there are no pending harassment proceedings before any administrative agency or any court of competent jurisdiction, and that there have been no harassments filed against the property prior to two (2) years from the date of this Contract.

17. Purchaser shall have reasonable access to the premises during the term of this Contract.

18. Any and all notices herein shall be made through the respective attorneys representing the Seller and Purchaser.


LIC SENIOR DEBT LLC                          25-16 37<sup>TH</sup>AVE OWNERS LLC
PURCHASER:                                    SELLER:


By:  _____        By: _____
                                            David Goldwasser

# EXHIBIT A

## **PROPERTY DESCRIPTION**

As to: 25-12 37th Avenue - Lot 21

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough and County of Queens, City and State of New York, bounded and described as follows:

BEGINNING at a point on the southwesterly side of 37th Avenue, distant northwesterly 50 feet from the corner formed by the intersection of the southwesterly side of 37th Avenue with the northwesterly side of 27th Street;

RUNNING THENCE northwesterly along the southwesterly side of 37th Avenue, 31.23 feet;

THENCE southwesterly along a line forming an interior angle of 86 degrees 02 minutes 10 seconds with the southwesterly side of 37th Avenue, 100.39 feet, more or less, to land heretofore conveyed to Frank Linkard by deed in Liber 2434 page 220;

THENCE southeasterly along said land so conveyed to Frank Linkard and at right angles to the northwesterly side of 27th Street, 25.42 feet;

THENCE northeasterly at right angles to the last course and a part of the distance through a party wall, 99,86 feet to the point or place of BEGINNING.

As to:   25-16 37th Avenue - Lot 22

All that certain plot, piece or parcel of land, situate, lying and being in the Borough and County of Queens, City and State of New York, bounded and described as follows:

BEGINNING at the corner formed by the intersection of the southwesterly side of 37th Avenue with the northwesterly side of 27th Street;

RUNNING THENCE northwesterly along the southwesterly side of 37th Avenue, 50.00 feet;

THENCE southwesterly on a line forming an interior angle of 89 degrees 21 minutes 10 seconds with the southwesterly side of 37th Avenue and part of the distance through a party wall, 99.81 feet (actual; 99.86 feet, deed);

THENCE northwesterly at right angles to the last mentioned course, 25.44 feet;

THENCE southwesterly along a line forming an interior angle of 86 degrees 38 minutes 56 seconds with the last mentioned course, 50 feet 4-1/4 inches;

THENCE southeasterly along a line forming an interior angle of 93 degrees 21 minutes 04

seconds with the last mentioned course, 72 feet 5-7/8 inches to the northwesterly side of 27th Street;

THENCE northeasterly along the northwesterly side of 27th Street and at right angles to the last mentioned course, 149.51 feet to the corner aforesaid at the point or place of BEGINNING.

Tax Block: 00368, Lots 0021 and 0022